[Cite as *State v. Davis*, 2018-Ohio-841.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105256**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**HAROLD V. DAVIS**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-588653-A

**BEFORE:** Laster Mays, J., Blackmon, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** March 8, 2018

-i-

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square, Suite 1616
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:   Marcus A. Henry
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1}   Appellant Harold V. Davis appeals his jury trial conviction for the rape of K.G. pursuant to R.C. 2907.02(A)(1)(c), a first-degree felony.   We affirm the conviction.

### I.   Background and Facts

{¶2}   Davis was indicted on May 11, 2016, for crimes allegedly committed on August 27, 2000.   The state filed three criminal counts:   (1) rape, in violation of R.C. 2907.02(A)(1)(c), a felony of the first degree; (2) rape, in violation of R.C. 2907.02(A)(2), a felony of the first degree; and, (3) kidnapping, in violation of R.C. 2905.01(A)(4), a felony of the first degree.

### A.   Preindictment Delay and Continuance

{¶3}   Prior to trial, Davis filed a motion for preindictment delay.   Davis argued that witnesses could not testify based on recollection and that a key witness, K.G.'s mother, passed

away the year prior to the indictment. Davis offered that K.G. told her mother that she had not been raped and the mother could testify to that fact as an admission against interest if the indictment had not been delayed. The mother was present and familiar with the circumstances surrounding the incident.

{¶4} Davis also requested a brief continuance on the ground that Davis had just informed his counsel that A.S., a friend of K.G.'s mother who lived next door to K.G. at the time and currently resided in Detroit, was present the night of the incident and was willing to testify. Davis's mother provided the information regarding A.S. Counsel spoke with A.S. the morning of trial. The trial court denied both motions.

### B. The Trial[1]

{¶5} K.G. testified that on August 27, 2000, she was 20 years of age.[2] Davis and K.G. lived on the same Cleveland street and talked several times on the telephone. K.G. resided with several family members including her mother. Davis called her between midnight and 2:00 a.m. and invited K.G. to come to his house. She agreed to sit in Davis's car in front of her house.

{¶6} K.G. sat in the passenger's seat and Davis in the driver's seat. They were talking and were not drinking alcohol. K.G. fell asleep in the car, and awakened to find Davis on top of her, between her legs, and her pants[3] were down. "There's other stuff that's a blur, that I can't remember, stuff that was said." She told him to stop and Davis "kept saying he was sorry. I don't know how it happened." (Tr. 315.) K.G. told Davis that she was going to the restroom and exited the vehicle. She entered her house and told her mother what happened. Her mother

---

[1] The 2000 police reports, incident report, K.G.'s refusal to prosecute form, and the 2014-2016 investigator's report(s) are not part of the record because they were not introduced into evidence.

[2] Davis was 21 years of age at the time.

[3] It was subsequently established by the hospital records that K.G. was wearing a miniskirt, not pants.

called the police and allegedly told K.G. to return to Davis's car until the police arrived, which was approximately 10 to 15 minutes later. Davis continued to apologize and ask for forgiveness, and told K.G. that he would admit to his actions if K.G. had called the police.

{¶7} According to K.G., she was present when Davis admitted to the police that he had sexually assaulted her and Davis was arrested. K.G. was examined at Huron Road Hospital and DNA specimens were collected. At the police station, K.G. signed a statement declining to prosecute Davis for sexual battery.

{¶8} K.G. testified to receiving a telephone call from an unidentified male who she thought was Davis's attorney and that Davis was also on the line. She was offered cash by the male but stated the cash was not the reason that she decided not to testify.

> I also didn't want to prosecute him because I didn't want to go through the process, the headache, the embarrassment. I didn't want to have to sit up here in this courtroom, and I didn't — also didn't want to, since he admitted to it and was honest about it, I didn't want to mess up his life.

(Tr. 323.) She rejected the money and never received, or requested, payment for her decision.

> K.G.: I never even thought I was going to get it. I never called him and asked him about it. We never even did none of that because we didn't care about it —
>
> Counsel: Who is we?
>
> K.G.: Me or my mother.

(Tr. 344.) After K.G. declined to move forward with prosecution, there was no further activity regarding the incident until K.G. was approached by investigator Ken Riolo in 2014.

{¶9} Dale W. Pignolet, M.D. ("Dr. Pignolet") testified via Skype as a witness for the state. Dr. Pignolet shared his education and experience, and the general protocol for emergency room examinations of rape victims. Dr. Pignolet examined K.G. at the hospital and testified based on the medical records, admitting that he had no recollection of the case.

{¶10}    The medical records documented K.G.'s arrival at 6:25 a.m.  K.G.'s statement according to the hospital records is that she fell asleep sitting in a car:

> She then woke and he was on top of me. He kept going until he got his thing in me.  I opened the door and I got out.  Then she denied any physical trauma or any trauma.  States there was no ejaculation.  States there was vaginal penetration only but no oral penetration, or no oral intercourse.

(Tr. 250.)

{¶11}  No vaginal trauma or injuries were observed; however, Dr. Pignolet stated that the absence of physical trauma is not determinative of whether a sexual assault occurred. K.G.'s clothing was also collected, including a t-shirt, denim miniskirt and bra, the items that K.G. told the doctor she was wearing at the time of the incident.  A rape kit was administered and swabs collected.

{¶12}    Michelle Matozel ("Matozel"), a forensic scientist in the DNA section of the Ohio Bureau of Criminal Investigation ("BCI"), generated the DNA report based on the rape kit test administered to K.G. The rape kit was submitted to BCI on December 4, 2013. On July 13, 2016, two months after the indictment, investigator Ken Riolo ("Riolo") submitted a DNA sample from Davis.  The swabs taken during the rape kit examination were tested.  A single swab from the vaginal area contained a DNA profile consistent with Davis.

{¶13} Sergeant Eugene Young ("Sgt. Young") testified that he was a patrol officer in 2000. He and his partner responded to a radio dispatch for a sexual assault. Sgt. Young talked with K.G. at the scene who explained she fell asleep in Davis's car and awakened to find him on top of her having sexual intercourse. K.G. told him to stop, Davis jumped up and they both left the vehicle.

{¶14}    Davis emerged from his residence several houses away from K.G.'s. Davis talked with Sgt. Young voluntarily, saying he wanted to explain his side of the story that was

similar to K.G.'s statement. Reportedly, Davis was *Mirandized*[4] but not in writing. Davis stated he and K.G. were sitting in the car talking and drinking. K.G. fell asleep and Davis said that he "wanted to try his luck." Davis "lifted her mini-skirt, moved her panties to the side, and penetrated her." (Tr. 366.)

**{¶15}** During cross-examination, Sgt. Young stated:

Counsel: And did Mr. Davis indicate whether K.G. was asleep when he did this?

Sgt. Young: Yes, he did say she was asleep. She — I don't recall if she was asleep or not, but she was moaning for a couple seconds and she opened up her eyes and she said no, and that's when he jumped up.

(Emphasis added.) (Tr. 366.) Davis was arrested and his vehicle towed. Additional evidence was collected and forwarded to the sex crimes unit.

**{¶16}** Sgt. Young testified that K.G. did not tell police that she entered her home and returned to the vehicle, or that Davis restrained her. Davis would have been permitted to make a call after his arrest but calls were monitored. Sgt. Young was not aware that K.G. subsequently signed a refusal to prosecute form.

**{¶17}** Investigator Riolo served 30 years as an FBI investigator and 2 years with the Cuyahoga County prosecutor's office as an investigator as of the trial date. Riolo works with the Cuyahoga County Sexual Assault Kit task force comprised of Cleveland police detectives, BCI agents, and members of the Cuyahoga County sheriff's office. The task force checks for rape kit adjudications and pursues those that have not moved forward. Most of the cases involve unidentified assailants known as "John Doe" cases.

---

[4] *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**{¶18}** Riolo was assigned K.G.'s case and approached K.G. with another investigator in August 2014. He asked her several questions about the incident and "might have read some excerpts [from the case file] to see if she recalled some things." (Tr. 392.)

**{¶19}** Riolo continued to investigate and obtained case records including police reports and photographs. He secured copies of the Huron Road Hospital records with K.G.'s written authorization and a subpoena. Riolo did not obtain written statements from Davis or K.G., but did review statements from August 2000 and K.G.'s refusal to prosecute form. Riolo confirmed that everything that he examined relating to the current indictment was available for prosecution activity in 2000.

**{¶20}** The state rested and the trial court denied Davis's Crim.R. 29 motion for judgment of acquittal. The jury found Davis guilty of rape pursuant to R.C. 2907.02(A)(1)(c). Davis was sentenced to four years of incarceration, with mandatory postrelease control of five years and registration under Megan's law as a sexually oriented offender. Davis appeals.

## II. Law and Analysis

**{¶21}** Davis proffers four assigned errors. The first two assigned errors challenge the sufficiency and weight of the evidence supporting Davis's conviction, the third assigned error asserts that the term "substantial impairment" in R.C. 2907.02(A)(1)(c) is void for vagueness, and finally, Davis argues that the trial court erred in failing to dismiss the indictment for preindictment delay. We elect to address the assigned errors out of order, beginning with preindictment delay.

### A.    Preindictment Delay

**{¶22}**   Davis argues that he was prejudiced by the 16-year delay in moving forward with this case.   The witness who could arguably provide exculpatory evidence, the mother of K.G., passed away in 2015.   Davis asserts the mother would have testified that the encounter was consensual.   "We review a trial court's decision on a motion to dismiss for preindictment delay de novo as to the legal issues, but afford great deference to the court's findings of fact." *State v. Crymes*, 8th Dist. Cuyahoga No. 104705, 2017-Ohio-2655, ¶ 12, citing *State v. Dixon*, 2015-Ohio-3144, 40 N.E.3d 601, ¶ 19 (8th Dist.).

**{¶23}**   Even where the state issues an indictment prior to expiration of the statute of limitations, an unjustifiable delay in issuing the indictment may raise Due Process Clause concerns.   *Crymes* at ¶ 13, citing  *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 11 ("*Jones II*"),[5] citing *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).   Due process rights may be violated where the "delay causes actual prejudice to a defendant's right to a fair trial."   *Id.*

**{¶24}**   The rape indictment in *Jones II* was handed down one day prior to the expiration of the 20-year statute of limitations.   *Jones II* at ¶ 7.   Jones asserted that he was prejudiced by the preindictment delay because his mother, who was at the home at the time of the alleged incident, had passed away.   *Id*. at ¶ 8.

**{¶25}** The *Jones II* court clarified the burden-shifting analysis for preindictment delays. "Once a defendant presents evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay."   *Jones II* at ¶ 13, citing *State v. Whiting*, 84 Ohio

---

[5]   *Jones II* reversed and remanded this court's en banc decision in *State v. Jones,* 2015-Ohio-2853, 35 N.E.3d 606 (8th Dist.)   ("*Jones I*").

St.3d 215, 217, 702 N.E.2d 1199 (1998); *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 99.

{¶26} *Jones II* rejected the "state's suggestion that any claim of actual prejudice based on the death of a potential witness is too speculative to succeed unless the defendant can establish precisely what the witness would testify to and that the testimony would be directly exculpatory." *Id*. at ¶ 27. The court further warned that the "determination of actual prejudice involves "'a delicate judgment'" and a "case-by-case consideration of the particular circumstances." *Id*. at ¶ 20.

{¶27} "Actual prejudice" may be found to exist where "missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense." *Id*. at ¶ 28, citing *State v. Luck*, 15 Ohio St.3d 150, 157-158, 472 N.E.2d 1097 (1984) (balancing the loss of evidence caused by the delay against the evidence available at the time of indictment).

{¶28} The *Jones II* court declined to determine whether defense counsel's proffer of "what exculpatory testimony [the witness] might have offered," was sufficient to demonstrate actual prejudice. *Id*., citing *Adams* at ¶ 103. Instead, the court remanded the case for this court's application of the proper standard. *Jones II* at ¶ 30.

{¶29} On remand, we determined that Jones did not demonstrate actual prejudice because the deceased witness, Jones's mother, was not the only witness to the incident. *State v. Jones*, 8th Dist. Cuyahoga No. 101258, 2017-Ohio-176, ¶ 8 ("*Jones III*"). The victim alleged that Jones's brother was also present. Though the brother had not been located, Jones did not demonstrate that the brother would not be available at the time of trial. *Id*. at ¶ 8. Thus, the

decedent's testimony conceivably "would have been cumulative to other evidence available at the time of the indictment." *Id*.

{¶30} In the current case, there was no question that the act occurred. The only issue is whether K.G. was asleep at the time that penetration took place, therefore, rendering K.G. unable to consent. In other words, was the act consensual. The trial court below, citing *Jones II*, determined:

> [E]ven if the statement of the victim's deceased mother were not considered hearsay, it does not rise to the level of actual prejudice. We just have an allegation of prejudice. We have not established actual harm of prejudice to Harold Davis.
>
> Further, these issues can be flushed out on cross-examination of the victim, whom
>
> I'm assuming will testify here in this trial.

(Tr. 14-15.) We reiterate that *Jones II* rejected the argument that a defendant would have to establish precisely what the witness's testimony would be to support actual prejudice, urging a case-by-case analysis. *Id.* at ¶ 20, 27.

{¶31} According to counsel, Davis asserts that K.G.'s mother told K.G. on the night of the encounter, while the police were on site investigating, "[you] need to stop lying, you didn't get raped, you need to go down there and tell them you didn't get raped." (Tr. 6.) It is also offered that the mother could also have testified to: (1) what transpired when K.G. entered the house, and subsequently returned to Davis's car, and (2) whether K.G. refused to prosecute because the act was consensual. "I [K.G.] didn't want to prosecute because [of] a lot of different reasons. *Me and my mother had spoke*." (Tr. 322.) (Emphasis added.) Testimony that is unavailable and would eliminate or minimize "the impact of the state's evidence and bolster the defense" is indicative of "actual prejudice." *Id*. at ¶ 28.

**{¶32}** There is also the factor of fading memories of the trial witnesses, who testified that they relied on the written records because they had no recollection of what transpired in 2000. In fact, K.G. exhibited memory issues such as whether penetration occurred:

Prosecutor: Do you recall whether he penetrated you?

K.G.: I don't recall.

Prosecutor: Would you have recalled back then?

K.G.: Yeah.

(Tr. 314.)

**{¶33}** There were a number of inconsistencies in K.G.'s testimony, such as: (1) Davis's removal of her pants though she was wearing a denim mini-skirt; (2) whether she was in the car when police arrived and how she heard Davis's conversation with police; and (3) whether she was convicted of felony forgery in 2007.

**{¶34}** The burden shifting analysis in *Jones II* requires balancing the lost evidence arising from the delay versus the evidence available to the state at the time of the indictment. *Id*. at ¶ 28, citing *Luck*, 15 Ohio St.3d 150, 157-158, 472 N.E.2d 1097 (1984). The state's evidence that existed at the time of the alleged crime is the same evidence introduced at trial, except for the variations in recollection, the rape kit tested in December 2013, and the DNA sample secured from Davis two months after the indictment providing DNA support for an act already admitted. The only changes in the past 16 years are faded memories and the death of K.G.'s mother.

**{¶35}** Investigator Riolo testified that he did not see any written statements by Davis or K.G. in the August 2000 records[6] that he reviewed, though he did see the refusal to prosecute form.

> Counsel: You said you believe you did — you believe he [Davis] had a written statement?
>
> Riolo: I believed it, yes. I believed that there may have been statements taken, because there was quite an investigation at the time at 8/27. Sometimes we don't get all those forms, so we have to go over to the Cleveland Police and look at the old — you know, old documents in the archives and stuff.
>
> Counsel: So you just thought that; you didn't actually see a written statement?
>
> Riolo: No, I never did see one.
>
> Counsel: So if you had said that to him, that would have been incorrect?
>
> Riolo: Yes.
>
> *       *       *
>
> Counsel: Okay. I want to make sure that I'm clear. What you gathered in your reports were the pictures, the police report that was taken in 2000, the medical records, the statements that were given in 2000 or alleged to have been given in 2000, correct?
>
> Riolo: Correct.

(Tr. 404, 406.) Riolo confirmed that, other than the follow-up conversation with K.G. in 2014, which K.G. testified was in 2016, all of the evidence that he reviewed was available in 2000. There is no reference to an attempt to interview K.G.'s mother as part of that investigation.

---

[6] It is unclear whether the statements were not reviewed because they could not be located because they are not part of the record.

**{¶36}** Finally, the state argues that Davis did not suffer actual prejudice because Davis's mother had recently identified another potential witness, A.S., a resident of Detroit, but Davis failed to produce A.S. at trial. A.S. lived next door to K.G.'s family in August 2000.

**{¶37}** The morning of the trial, Davis informed his counsel that his mother recently recalled that A.S. was a neighbor of K.G.'s in August 2000. A.S. talked with Davis's counsel by telephone and said she would be willing to testify at Davis's trial. Davis requested a "brief continuance to allow [A.S.] to come and corroborate the defendant's argument" that there was no rape.

**{¶38}** We cannot say that the trial court abused its discretion in denying the last-minute request. How a trial court manages its docket is wholly within the court's discretion, and a reviewing court will not seek to overturn a trial court's decision unless there has been an abuse of discretion. *6750 BMS, L.L.C.*, 2016-Ohio-1385, 62 N.E.3d 928, ¶ 18 (8th Dist.), citing *State ex rel. v. Cos. V. Marshall Cty. Aud.*, 81 Ohio St.3d 467, 469, 692 N.E.2d 198 (1998).

**{¶39}** We also consider that the witnesses' testimony about what she heard K.G.'s mother say constitutes inadmissible hearsay:

> The hearsay rule is a rule of evidence. Basically, the rule renders inadmissible out-of-court declarations which are offered at trial to prove the truth of the matter asserted therein. *Potter v. Baker,* 162 Ohio St. 488, 124 N.E.2d 140 (1955). The premise of the rule is that such evidence is unreliable because the declarant is not present at trial, not under oath, and not subject to cross-examination. *McCormick*, *Evidence* § 245 (2d Ed. 1972).

*State v. Kilbane*, 8th Dist. Cuyahoga Nos. 38428, 38383, and 38433, 1979 Ohio App. LEXIS 10550, *22 (July 3, 1979). There also appears to be no applicable exception under Evid.R. 803. There were only two witnesses to the alleged rape: K.G. and Davis. Also, the state denied knowing anything about the witness, and Davis admitted that K.G. was sleeping according to the

typewritten police report that was not introduced into evidence at the trial that Sgt. Young relied on for his testimony.

**{¶40}** Under the cited facts and circumstances of this case, we do not find that Davis has demonstrated actual prejudice. The assigned error is deemed to be without merit.

**B.** **Sufficiency and Manifest Weight of the Evidence.**

**1.** **Standard of Review**

**{¶41}** The Ohio Supreme Court has explained that, "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. An appellate court, "may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387.

**{¶42}** The question of "whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955); *Thompkins* at 386. It is "an inquiry about due process, * * * the resolution of which does not allow the court to weigh the evidence." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶43}** In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the

conviction. *State v. Starks,* 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387.

> "[T]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

*State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

**{¶44}** After consideration of whether the evidence is sufficient as a matter of law, a manifest weight inquiry looks at whether the evidence was substantial enough for a jury to reasonably conclude that all of the elements of the alleged crime have been proved beyond a reasonable doubt. We sit "as a 'thirteenth juror.'" *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). We review the entire record, consider the credibility of the witnesses, weigh the evidence and all reasonable inferences, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Martin* at 175; *Leonard* at 68.

**{¶45}** Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.

> "It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis added.) *Black's* [*Law Dictionary*] 1594 [6 Ed.1990].

*Thompkins* at *id.*

## 2. Discussion

{¶46} Davis was convicted of R.C. 2907.02(A)(1)(c), which provides:

(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies: * * *

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

{¶47} There is no question here that intercourse occurred. The question is solely whether K.G. was asleep at the time and, as a result, unable to consent. Both parties stated K.G. was asleep at the moment of penetration.

{¶48} The case law is clear that "'sleep constitutes a mental or physical condition that substantially impairs a person from resisting or consenting to sexual conduct.'" *State v. McCall*, 8th Dist. Cuyahoga No. 104479, 2017-Ohio-296, ¶ 6, citing *State v. Jones*, 8th Dist. Cuyahoga No. 98151, 2012-Ohio-5737, ¶ 30, citing *State v. Clark*, 8th Dist. Cuyahoga No. 90148, 2008-Ohio-3358, ¶ 21.

{¶49} We therefore find that the evidence "is legally sufficient to support a verdict as a matter of law." *Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins,* 78 Ohio St.3d at 386, 387, 678 N.E.2d 541. We further find that "the state has appropriately carried its burden of persuasion." *Thompkins,* at 390. The first and second assigned errors are without merit.

## C. R.C. 2907.02(A)(1)(c) and Substantial Impairment.

**{¶50}** R.C. 2907.02(A)(1)(c) provides that a person is not to engage in sexual conduct with another who "is substantially impaired because of a  mental or physical condition," and "the person knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired" due to the mental or physical condition.   Davis argues that the statute authorizes and encourages discriminatory and arbitrary enforcement, and fails to meet the fair warning requirement of *United States v. Lanier*, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), because a person would not have notice of the nature of the behavior prohibited.

**{¶51}**    A statute that is properly enacted is presumptively constitutional.   *State v. Anderson*, 57 Ohio St.3d 168, 171, 566 N.E.2d 1224 (1991). The challenger bears the burden of proving unconstitutionality beyond a reasonable doubt.   *Id*.

**{¶52}**   Vague statutes abridge due process considerations of notice and fairness:

> Three "values" rationales are advanced to support the "void for vagueness" doctrine. * * * These values are first, to provide fair warning to the ordinary citizen so behavior may comport with the dictates of the statute; second, to preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints; and third, to ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited.   *State v. Tanner*, 14 Ohio St.3d 1, 3, 472 N.E.2d 689 (1984).

*State v. Kronenberg*, 8th Dist. Cuyahoga No. 101403, 2015-Ohio-1020, ¶ 33.

**{¶53}**   As stated in our response to the first and second assigned errors, "sleep constitutes a mental or physical condition that substantially impairs a person from resisting or consenting to sexual conduct.   When a person is asleep, he or she is not in a mental condition to resist or consent to the sexual conduct."

*State v. Clark*, 8th Dist. Cuyahoga No. 90148, 2008-Ohio-3358, ¶ 21, citing *State v. Graves*, 8th Dist. Cuyahoga No. 88845, 2007-Ohio-5430 and *State v. Younger*, 8th Dist. Cuyahoga No.

86235, 2006-Ohio-296. An ordinary person would "know or have reasonable cause to believe" that a person who is sleeping is unable to resist or consent. *See* R.C. 2907.02(A)(1)(c).

**{¶54}** The Sixth District Court of Appeals responded to a void-for-vagueness challenge to R.C. 2907.02(A)(1)(c). We agree with the court's determination that the statute satisfies the three-prong test to overcome vagueness. The statute "contains ascertainable standards of guilt, provides sufficient notice of the conduct proscribed and contains sufficient guidelines to avoid arbitrary or discriminatory enforcement." *In re J.J.*, 6th Dist. Erie No. E-11-018, 2012-Ohio-2550, ¶ 17.

**{¶55}** The third assigned error is without merit.

## III.    Conclusion

**{¶56}** The trial court's findings are affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

PATRICIA ANN BLACKMON, P.J., and
LARRY A. JONES, SR., J., CONCUR