[Cite as *State v. Smith*, 2023-Ohio-1670.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :

                       No. 111870

    v.                               :

ANTOINE SMITH,                          :

    Defendant-Appellant.             :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 18, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-662727-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Nora C. Bryan, Assistant Prosecuting Attorney, *for appellee.*

The Law Office of Jaye M. Schlachet and Eric M. Levy, *for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant Antoine Smith was convicted of two counts of rape in violation of R.C. 2907.02(A)(1)(c) and one count of attempted rape in violation of R.C. 2923.02 and 2907.02(A)(1)(c). Smith's convictions were based on

sufficient evidence and were not against the manifest weight of the evidence, and the revised code sections for which he was convicted are not unconstitutionally vague. The state's closing argument, when considered in context of the entire trial, did not deny Smith a fair trial. Further, the crimes for which Smith was convicted are not allied offenses of similar import and the trial court properly imposed sentence pursuant to the Reagan Tokes Law. Smith's convictions are affirmed.

I. PROCEDURAL HISTORY AND RELEVANT FACTS

{¶ 2} On August 31, 2021, Smith was indicted for three counts of rape in violation of R.C. 2907.02(A)(1)(c), all felonies of the first degree. Trial began on June 21, 2022. At the close of its case, the state amended the third count of the indictment to include the attempt section pursuant to R.C. 2923.02, making that offense a felony of the second degree. On June 28, 2022, the jury returned a verdict of guilty on all counts of the amended indictment. On July 25, 2022, the trial court imposed an aggregate sentence of 3 to 4-and-one-half years in prison.

{¶ 3} At trial, the victim, S.W., then aged 43, testified that she knew Smith his whole life and was his godmother. On September 13, 2020, she hosted an impromptu birthday party for her nephew at her home and invited Smith. S.W. was drinking beer and tequila throughout the day and was intoxicated. Smith and his cousin arrived at the house around 10:30 p.m. or 11:00 p.m. Sometime after 11:00 p.m., Smith left the party and returned with a bottle of tequila. S.W. testified that

she poured herself a drink of tequila and that she did not remember what happened after that.  S.W. did not see Smith drink, and he did not appear intoxicated to her.

{¶ 4}  After her guests left, S.W. remembered being asleep in her bed.  She was naked and didn't remember taking her clothes off.  She became aware of someone pulling her knees down the bed.  She opened her eyes and recognized Smith on top of her.  He was naked.  She said "no," and then was penetrated.  She said it hurt and that she was in a blackout state.  She told Smith to stop, and he did.

{¶ 5}  After that, S.W. testified that she must have blacked out again because her next memory was someone penetrating her again, but this time she was on her back.  Smith was again on top of her.  S.W. said she experienced physical pain and told Smith to stop and he did.

{¶ 6}  S.W. said that she remembered being on her stomach, still naked, and that Smith was on the back of her hips and bottom.  Smith tried to lift her up by her waist and penetrate her.  She slid over so that "he couldn't do it" and told him "no" and he stopped.

{¶ 7}  S.W. woke the next morning at around 7:00 a.m.  Smith was still there, but she did not speak with him about the assaults.  She felt foggy and clouded.  The next day, S.W. went to Hillcrest Hospital to get medication to prevent any sexually transmitted diseases.  There, she did not disclose the incident with Smith

because she loved him and considered him to be family.  However, the day after her visit to the hospital, Smith and S.W. exchanged messages through Facebook:

Smith:      You ok
            Feeling better
S.W.        No
Smith:      What is it the pills
S.W.        What pills

{¶ 8}  Smith did not respond to S.W.'s question.  After 40 minutes elapsed, the following exchange took place:

S.W.        Hello what pills?
Smith:      I thought you was on pills from the doctor or something
            making you feel sick
S.W.        No

{¶ 9}  Because S.W. knew she didn't take any pills at the party, she went to Hillcrest Hospital for testing.  While there, she saw a Sexual Examination Nurse Examiner ("SANE") nurse, who performed a drug facilitated sexual assault kit.  The examination included taking swabs for DNA evidence as well as testing S.W. for drugs.  S.W. testified that on September 20, 2021, she confronted Smith over Facebook messenger about drugging and violating her.  Smith denied doing so.

{¶ 10}  Alexandra Tallman, a registered nurse at the Cleveland Clinic, testified that she was a SANE nurse from 2018 through 2021.  She examined S.W. on September 17, 2021, completing a sexual assault kit and drug facilitated sexual assault kit.  Tallman recounted S.W.'s narrative regarding the sexual assault as well as S.W.'s account of Smith asking her about pills.  Smith's question caused S.W. to believe she may have been drugged.   Smith stipulated that sperm found in the

SANE kit was consistent with his DNA and that he could not be eliminated from being the source of the sperm. As to the drug test, Dr. Appollonio of the Cuyahoga County Reginal Forensic Science Lab testified that Lorazepam was found. He identified Lorazepam as being a depressant.

{¶ 11} In presenting his defense at trial, Smith called his girlfriend Julia Thompson to testify. Thompson said that she picked Smith up from S.W.'s home the morning after the party and that she saw S.W. give Smith a kiss on the cheek when he left her house. Smith then testified at trial, relating a different version of events at the party. He said he went to the party at S.W.'s. He did not think S.W. was intoxicated. Shortly after he arrived, he left the party to get alcohol and returned with a bottle of tequila. People at the party poured their own drinks, including S.W. Smith said he drank three half-full cups of tequila and was unaware of how much S.W. had to drink.

{¶ 12} Smith testified that he was drunk and eventually went upstairs where he threw up. S.W. helped him and suggested that he lay down in her bed. Smith did so and fell asleep. Smith said he woke up to S.W. caressing his genital area. He elaborated that even though he thought it was not right, he "indulged" in consensual sex with his godmother. Smith denied having pills or drugging S.W. Smith explained that because S.W. had been dating his uncle, who had a temper, he didn't disclose the sexual activity to anyone. He further explained the Facebook messages, stating he had seen four to five prescription bottles in S.W.'s bedroom and he

thought that those pills might have had an effect on S.W. because she was drinking at the party.

{¶ 13} Smith explained the context of later messages with S.W. by explaining that his uncle found out about him having sex with S.W. and was upset with him. He stated he believed S.W. was accusing him of rape to cover up the fact she had sex with him. On cross-examination, Smith admitted that he did not mention that he had consensual sex with S.W. to the police when he spoke with a detective on the phone and that the first time he informed anyone involved in the investigation of the rape charges that he had consensual sex with S.W. was during his testimony.

## II. LAW AND ANALYSIS

### A. Smith's Convictions Were Based on Sufficient Evidence and Were Not Against the Manifest Weight of the Evidence

{¶ 14} Smith's first assignment of error reads:

Appellant's convictions must be reversed where the State of Ohio failed to present sufficient evidence to support the convictions.

{¶ 15} His second assignment of error reads:

Appellant's convictions are against the manifest weight of the evidence.

{¶ 16} Smith argues that the state did not present sufficient evidence for two elements of the crimes for which he was charged: 1) that S.W. was substantially impaired at the time of the offenses charged, and 2) that he had knowledge of any impairment. In reviewing a challenge to the sufficiency of evidence, we determine whether the evidence, if believed, would convince the average juror of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574

N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* Our review is not to determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶ 17} Smith also argues his convictions were against the manifest weight of the evidence because his testimony was more credible in contrast to S.W.'s account in which her memory was self-reported as spotty. Further, he argues the jury lost its way by not giving more weight to the evidence of motive on S.W.'s part to fabricate rape allegations in light of her relationship with his uncle. A manifest weight challenge asserts that the state has not met its burden of persuasion in obtaining the conviction. *Thompkins,* at 390. A manifest weight challenge raises factual issues:

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the

exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Townsend*, 8th Dist. Cuyahoga No. 107177, 2019-Ohio-544, ¶ 20.

{¶ 18} Smith was convicted of two counts of rape and one count of attempted rape pursuant to R.C. 2907.02(A)(1)(c), which provides in the relevant part:

> No person shall engage in sexual conduct with another who is not the spouse of the offender[, when] [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition[.]

{¶ 19} In *State v. Zeh,* 31 Ohio St.3d 99, 103, 509 N.E.2d 414 (1987), the Ohio Supreme Court held that "substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct." *Id.* at 103-104. Further, "substantial impairment may be proven by the victim's own testimony." *Id.* at ¶ 17. Sleeping has been held to be "a mental or physical condition that substantially impairs a person from resisting or consenting to sexual conduct." *State v. Keller*, 8th Dist. Cuyahoga No. 106196, 2018-Ohio-4107, ¶ 25, citing *State v. McCall,* 8th Dist. Cuyahoga No. 104479, 2017-Ohio-296, ¶ 6.

{¶ 20} This court has noted that Ohio courts consistently hold that a victim's testimony alone is sufficient to support a rape conviction. *State v. Roan*, 8th Dist. Cuyahoga No. 108917, 2020-Ohio- 5179, ¶ 21, citing *State v. Blankenship*, 8th Dist.

Cuyahoga No. 77900, 2001 Ohio App. LEXIS 5520, 11 (Dec. 13, 2001). Further, "there is no requirement that a rape victim's testimony be corroborated precedent to conviction." *Id.*

{¶ 21} S.W. testified that she was intoxicated, asleep, and awoke to Smith engaging in sexual conduct with her. This testimony alone is sufficient to prove a violation of R.C. 2907.02(A)(1)(c). *Roan* at ¶ 21. (Thus, upon review of the state's evidence, namely C.H.'s testimony that Roan penetrated her vagina while she was sleeping, we find sufficient evidence to convict Roan of substantial impairment rape in violation of R.C. 2907.02(A)(1)(c).) Additionally, S.W.'s testimony that Smith was told "no" twice, then stopped his action, but continued to engage in sexual conduct provides sufficient evidence to support all counts of the amended indictment.

{¶ 22} In considering the weight of the evidence presented, the jury was confronted with two accounts: S.W.'s and Smith's. Smith testified that S.W. initiated sex with him and had a motive to fabricate a rape charge. S.W. testified that she only drank alcohol the day of the party and denied taking any pills. However, the sexual assault kit revealed evidence of a depressant drug in her system. Additionally, the messages and interaction between S.W. and Smith, wherein Smith first raised the issue of pills, lends persuasive support to her account. As such, we

cannot say that the jury lost its way in assessing the evidence or the credibility of witnesses or that Smith's convictions amount to a manifest miscarriage of justice.

{¶ 23} The first and second assignments of error are overruled.

B. R.C. 2907.02(A) Is Not Unconstitutionally Vague

{¶ 24} Smith's third assignment of error reads:

> Appellant's convictions must be vacated where he was convicted of rape in violation of R.C. 2907.02(A)(1)(c) a vague and unconstitutional statute.

Smith argues that because there is no definition of substantial impairment in the Ohio Revised Code, R.C. 2907.02(A)(1)(c) is unconstitutionally vague because reasonable people would not know whether or not their conduct violated the statute. He further argues that several other states have statutes that contain definitions of substantial impairment in their respective criminal codes. The state argues that because the term "substantial impairment" is to be given its plain and ordinary meaning, the statute proscribes conduct in a manner that is understandable to a person of ordinary intelligence.

{¶ 25} Because there is a strong presumption that a statute is constitutional, a defendant challenging the constitutionality of a statute bears the burden of proof to demonstrate the statute is unconstitutional beyond a reasonable doubt. *State v. Anderson*, 57 Ohio St.3d 168, 171, 566 N.E.2d 1224 (1991). Smith presents an argument that the rape statute under which he was convicted violates his due

process right because it is void for vagueness. We have stated that in such challenges:

> "Three 'values' rationales are advanced to support the 'void for vagueness' doctrine. * * * These values are first, to provide fair warning to the ordinary citizen so behavior may comport with the dictates of the statute; second, to preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints; and third, to ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited." *State v. Tanner*, 14 Ohio St.3d 1, 3, 472 N.E.2d 689 (1984).

*State v. Kronenberg*, 8th Dist. Cuyahoga No. 101403, 2015-Ohio-1020, ¶ 33.

{¶ 26} In *Zeh*, the court held that because the phrase "substantially impaired" is not defined in the Ohio criminal code, it must be given its generally understood common usage: "a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of [her] conduct or to control [her] conduct." 31 Ohio St.3d at 103-104, 509 N.E.2d 414. Ohio courts of appeals have found that R.C. 2907.02(A)(1)(c) is not unconstitutionally vague for failing to specifically define substantial impairment or mental condition beyond the common usage of those terms. *In re J.J.,* 6th Dist. Erie No. E-11-018, 2012-Ohio-2550, ¶ 15-17; *State v. McIntosh*, 6th Dist. Lucas No. L-21-1207, 2022-Ohio-3771, ¶ 39 ("We find that the statute is not unconstitutionally vague merely because it fails to define 'mental condition.'").

{¶ 27} In determining whether R.C. 2907.02(A)(1)(c) is unconstitutionally vague, we have found that the statute is not unconstitutionally vague because it "'contains ascertainable standards of guilt, provides sufficient notice of the conduct

proscribed and contains sufficient guidelines to avoid arbitrary or discriminatory enforcement.'" *State v. Davis*, 8th Dist. Cuyahoga No. 105256, 2018-Ohio-841, ¶ 54, quoting *In re J.J.* at ¶ 17. Although we recognize other jurisdictions may specifically define substantial impairment, such does not preclude our finding that R.C. 2907.02(A)(1)(c) is not unconstitutionally vague.

{¶ 28} The third assignment of error is overruled.

C.     The Trial Court Properly Imposed Sentence on All Three Counts
       of the Amended Indictment

{¶ 29} The fourth assignment of error reads:

The trial court erred where it failed to merge appellant's three guilty verdicts for purposes of sentencing where all three were allied offenses required to be joined for sentencing and resulting in a single conviction.

{¶ 30} Smith was convicted of two counts of rape in violation of R.C. 2907.02(A)(1)(c) and one count of attempted rape in violation of R.C. 2923.02 and 2907.02(A)(1)(c). In arguing that the offenses are allied, Smith argues that he was convicted of multiple crimes for a single and continuous course of conduct that took place with a single individual. He further argues that each offense for which he was found guilty was of the same animus. Smith also argues that because trial counsel did not raise an allied offenses argument at the sentencing hearing, he suffered ineffective assistance of counsel. The state argues that the offenses were not allied as there was evidence that the two rape charges and the attempted rape

were distinct, separated by time and circumstance, and that the acts caused separate and cumulative harm to the victim.

{¶ 31} Our review of an allied offenses question is de novo. *State v. Webb*, 8th Dist. Cuyahoga No. 98628, 2013-Ohio-699, ¶ 4, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28. R.C. 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 32} Smith failed to object to the imposition of multiple sentences below, and therefore, he has waived all but plain error. *State v. Tate*, 8th Dist. Cuyahoga No. 97804, 2014-Ohio-5269, ¶ 35. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *State v. Robinson*, 8th Dist. Cuyahoga No. 110467, 2022-Ohio-1311, ¶ 48. Notice of plain error, however is to be taken in exceptional cases and only when necessary to prevent a manifest miscarriage of justice. *Id.*

{¶ 33} Because R.C. 2941.25 focuses on the defendant's conduct, a court's determination of whether the defendant has been found guilty of allied offenses of similar import is dependent upon the facts of the case. *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 18, quoting *State v. Ruff*, 143 Ohio

St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 26.  Specifically, because an offense may be committed in a variety of ways, the Ohio Supreme Court has held that a defendant may be convicted and sentenced for multiple offenses when either "(1) the offenses are dissimilar in import or significance — in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Ruff* at ¶ 25.

{¶ 34} In determining whether several counts of rape are allied offenses, "courts have held that multiple convictions based on the same type of sexual conduct are not subject to merger when the conduct is separated by intervening acts." *State v. J.M.,* 10th Dist. Franklin No. 14AP-621, 2015-Ohio-5574, ¶ 52, citing *State v. Jones*, 78 Ohio St.3d 12, 14, 676 N.E.2d 80 (1997); *State v. Burgess*, 162 Ohio App.3d 291, 2005-Ohio-3747, 833 N.E.2d 352, ¶ 37 (2d Dist.).

{¶ 35} Contrary to Smith's arguments, there was evidence at trial supporting a finding that the offenses for which he was found guilty were committed separately. Although the acts were committed close in time, the acts were separated by a significant intervening events. S.W. testified that she was asleep or passed out and that she awoke to Smith penetrating her.  She said "no," and he stopped.  S.W. stated that she was again awakened, that she was in a different position on the bed, and that Smith was again penetrating her.  She said "no," and he stopped.  S.W. then testified that she was again awakened, that she was in a different position on the bed, and that Smith was attempting to penetrate her.   Accordingly, we cannot say the trial court committed plain error in imposing sentences on each of the counts for

which Smith was found guilty.  As such, Smith did not suffer ineffective assistance of counsel where we have determined no plain error occurred because he has not demonstrated that the outcome at sentencing would be different.  *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, 146 N.E.3d 560, ¶ 10.

{¶ 36} The fourth assignment of error is overruled.

D.      Smith's Claims of Prosecutorial Misconduct Did Not Result in the Denial of a Fair Trial

{¶ 37} Smith's fifth assignment of error reads:

Appellant's convictions must be reversed due to prosecutorial misconduct in inviting the jury to convict appellant of a specific crime not indicted not the general offense as indicted and in classifying appellant's testimony as a lie.

{¶ 38} Smith argues that the prosecutor committed misconduct during the closing argument by arguing Smith drugged S.W., which act would be indictable as a separate offense.  Further, Smith argues the prosecutor committed misconduct in closing argument by stating Smith lied.  The state argues that the prosecutor had discretion to indict and was free to argue reasonable inferences from the evidence in its closing argument. It further argues that when the closing argument is considered within context, Smith was not denied a fair trial.

{¶ 39} In *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 162, the Ohio Supreme Court provided the framework to review allegations of prosecutorial misconduct:

To evaluate allegations of prosecutorial misconduct, we "must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected [the defendant's] substantial

rights." *State v. LaMar*, 95 Ohio St. 3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 121. Because prosecutorial misconduct implicates due-process concerns, "[t]he touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 200, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). We "will not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even" absent the misconduct. *LaMar* at ¶ 121.

{¶ 40} In this case, there was no objection during the state's closing argument regarding the comments asserted as error, as such we review for plain error. *Robinson*, 8th Dist. Cuyahoga No. 110467, 2022-Ohio-1311, at ¶ 47.

{¶ 41} Prosecutors are allowed latitude in closing arguments and may comment on "'what the evidence has shown and what reasonable inferences may be drawn therefrom.'" *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), quoting *State v. Stephens*, 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970). In its closing argument, the prosecutor discussed the evidence, highlighted portions of S.W.'s testimony, and connected evidence to the elements of the charges. In doing so, the prosecutor outlined that S.W. testified that she drank alcohol, did not take any pills, was found to have drugs in her system, and Smith first raised the issue of S.W. taking pills. The prosecutor then argued, "I submit to you that he's the one that gave her the pills. He's the one that mentions the pills, okay, and they're in her system." The prosecutor used this inference along with S.W.'s testimony that she was asleep and passed out to ask the jury to find Smith had knowledge that S.W. was substantially impaired. We do not find this line of argument to be improper because

it is based upon a reasonable inference and addresses an element of the offense charged.

{¶ 42} Smith also argues that the state should have been prohibited from arguing that he drugged S.W. because it did not indict him for a violation of R.C. 2907.02(A)(1)(a); we do not agree. "[A] prosecutor's 'charging discretion' is ordinarily beyond the purview of appellate review 'so long as the complaints and indictments are based on the statutory elements of the offense.'" *State v. Armstrong*, 10th Dist. Franklin No. 16AP-410, 2017-Ohio-8715, ¶ 32, citing *State v. Ziegelhofer*, 6th Dist. Wood No. WD-02-038, 2003-Ohio-1404, ¶ 12. In this case, evidence that Smith drugged S.W. would be relevant to Smith's knowledge S.W. was substantially impaired and we cannot say the state's arguments were to be prohibited.

{¶ 43} Smith also claims prosecutorial misconduct occurred during the state's closing argument when the prosecutor told the jury:

> Further, he knows what he's done, because you hear him lie to you on this stand about some story now that she came on to him and caressed him. Somehow this is the first time anybody's ever heard this. But that gives credence to the fact that he knew exactly what he did by now making up this story, by never telling the police, by texting her the next day trying to kind of gauge what she knows, what does she think.

{¶ 44} A prosecutor may "fairly comment on the credibility of witnesses based on the witnesses' testimony at trial." *State v. Williams*, 8th Dist. Cuyahoga No. 97039, 2012-Ohio-1741, ¶ 12, citing *State v. Price*, 60 Ohio St.2d 136, 140, 398 N.E.2d 772 (1979). Further, although prohibited from stating a personal belief that a defendant is lying, the prosecutor "may suggest that the evidence demonstrates

that the defendant is lying." *State v. Skipper*, 8th Dist. Cuyahoga No. 81963, 2003-Ohio-3531, ¶ 45, citing *State v. Draughn*, 76 Ohio App.3d 664, 670, 602 N.E.2d 790 (5th Dist.1992); *State v. Kroger*, 12th Dist. Clermont No. CA99-05-050, 2000 Ohio App. LEXIS 1393 (Apr. 3, 2000).

{¶ 45} When a prosecutor states in closing argument that a defendant is lying and when that statement is based on evidence within the record and not an expression of personal belief or opinion, this court has found such statement to be proper. *State v. Powell*, 8th Dist. Cuyahoga No. 99386, 2014-Ohio-2048, ¶ 72; *Williams* at ¶ 12; *Skipper* at ¶ 45. In closing argument, the prosecutor was blunt, but such bluntness did not amount to a statement of personal opinion or belief. Further, the claim that Smith lied in his testimony was based on an inference that his testimony was fabricated for trial. As such, we cannot say that the comment was wholly improper, was based on the prosecutor's personal belief, or that such comment precluded Smith from receiving a fair trial when considering the remark in the context of the entire trial. As such, in balancing the nature of the prosecutor's remarks, the lack of objection, and the evidence against Smith, we do not find the

prosecutor's closing argument was wholly improper or that it denied Smith a fair trial.

{¶ 46} The fifth assignment of error is overruled.

E.  The Trial Court Properly Imposed an Indefinite Sentence Pursuant to the Reagan Tokes Law

{¶ 47} Smith's sixth assignment of error reads:

Appellant's indefinite sentence imposed under the Reagan Tokes sentencing scheme violates his rights under the United States Constitution.

{¶ 48} Smith argues that the indefinite sentence imposed by the trial court pursuant to the Reagan Tokes Law violates 1) his constitutional right to trial by jury, 2) the constitutional separation-of-powers doctrine, and 3) the constitutional right to due process. In *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.) (en banc), this court rejected these arguments.

{¶ 49} The sixth assignment of error is overruled.

III.  CONCLUSION

{¶ 50} Smith's convictions of two counts of rape in violation of R.C. 2907.02(A)(1)(c) and one count of attempted rape in violation of R.C. 2923.02 and 2907.02(A)(1)(c) were based on sufficient evidence and were not against the manifest weight of the evidence, and the revised code sections for which he was convicted are not unconstitutionally vague. There was evidence the offenses were committed separately and were not allied offenses of similar import. The state's closing argument, when considered in the context of the entire trial, did not deny

Smith a fair trial. Finally, the trial court properly imposed sentence pursuant to the Reagan Tokes Law.

{¶ 51} Judgment of the trial court is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
MARY EILEEN KILBANE, J., CONCUR

N.B. Judge Mary Eileen Kilbane joined the dissenting opinion by Judge Lisa B. Forbes and the concurring in part and dissenting in part opinion by Judge Anita Laster Mays in *Delvallie* and would have found the Reagan Tokes Law unconstitutional.