[Cite as *State v. Jones*, 2017-Ohio-176.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101258**

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## DEMETRIUS JONES

DEFENDANT-APPELLEE

## JUDGMENT:
### REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-577686-A

**BEFORE:** S. Gallagher, J., Jones, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** January 19, 2017

**ATTORNEYS FOR APPELLANT**

Michael C. O'Malley
Cuyahoga County Prosecutor
By:   Brett Hammond
          T. Allan Regas
          Daniel T. Van
          Mary Weston
Assistant Prosecuting Attorneys
Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio    44113


**ATTORNEY FOR APPELLEE**

Russell S. Bensing
1360 East 9th Street
Suite 600
Cleveland, Ohio    44114

SEAN C. GALLAGHER, J.:

{¶1} This case is before us following a remand from the Ohio Supreme Court in *State v. Jones*, Slip Opinion No. 2016-Ohio-5105 (hereafter "*Jones*"). In *Jones*, the Ohio Supreme Court reversed the majority en banc decision of this court in *State v. Jones*, 2015-Ohio-2853, 35 N.E.3d 606 (8th Dist.), upon finding the Eighth District majority applied an incorrect standard in its analysis of Jones's preindictment-delay claim. *Jones* at ¶ 30. The Ohio Supreme Court remanded the case for the court of appeals to make the appropriate determination "in the first instance," applying the two-part burden-shifting analysis enunciated in *State v. Whiting*, 84 Ohio St.3d 215, 217, 1998-Ohio-575, 702 N.E.2d 1199, and the actual-prejudice standard from *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984). *Jones* at ¶ 29.[1] Upon application of the foregoing mandate, we find that Jones failed to establish actual prejudice from the preindictment delay. Therefore, we reverse the trial court's decision to dismiss the charges of rape and kidnapping against Jones, and we remand the case for further proceedings.

{¶2} The underlying facts and the procedural background that led to the trial court's decision to dismiss the case for preindictment delay were set forth by the Ohio Supreme Court in *Jones*, and are restated herein:

Early on September 2, 1993, S.W. reported to the Cleveland Police

---

[1] We note that while we would have sent this case back to the trial court for a full hearing under the standard reasserted in *Jones*, we here (now) follow the mandate of the Ohio Supreme Court that instructed this court to decide the matter.

Department that Jones had raped her late the previous night. The responding officers completed an incident report and transported S.W. to St. Luke's Hospital, where a rape kit was administered.

The incident report lists addresses for S.W., S.W's mother — who is listed as a witness — and Jones, and it also includes S.W.'s account of the alleged rape. S.W. stated that she was with Jones at his mother's apartment, where Jones also lived. She said that when she told Jones that she had to leave, he refused to let her go, locked her in his bedroom, threw her on the bed, threatened her with a knife, and told her she was not leaving until they had sex. She said that she screamed for help and fought Jones but that neither Jones's mother nor his brother responded. [Footnote: Jones's counsel contested S.W.'s identification of the other individual as Jones's brother but did not identify the individual.] She said that Jones ultimately had vaginal intercourse with her and that her clothes were ripped during the offense.

S.W.'s medical records indicate that she identified Jones as her attacker and that at the time of her forensic exam, she was still wearing the clothes she wore at the time of the alleged rape.

In the week after the alleged rape, police officers twice unsuccessfully attempted to locate S.W. at the address listed in the incident report. A police report dated September 8, 1993 characterizes the address listed for S.W. as "a bad address." There is no indication that the officers made any other attempt to contact S.W. And despite S.W.'s identification of Jones by name and address, the report states, "Until such time as the victim comes forth and assist[s] in this investigation we have no further investigative leads." The record does not reveal that the police took any other investigative steps, such as photographing S.W. or the alleged crime scene, collecting S.W.'s clothing or other physical evidence, or interviewing potential witnesses. Rather, the report states that Jones "is no longer wanted" in connection with the case.

Even though S.W. had identified Jones, the Cleveland Police Department sent S.W.'s rape kit to the Ohio Bureau of Criminal Investigation ("BCI") for DNA testing in September 2011, 18 years after the alleged rape, as part of Ohio's sexual-assault-kit testing initiative. BCI informed the Cleveland Police Department in August 2012 that the testing of swabs from the rape kit resulted in two DNA profiles — one consistent with S.W. and one consistent with Jones. In June 2013, BCI informed the Cleveland Police Department and the Cuyahoga County prosecutor's office that DNA from the rape kit matched a sample of Jones's DNA in the Combined DNA Index

System.

On August 30, 2013, one day before the expiration of the 20-year statute of limitations that was applicable at the time, [FN omitted] the Cuyahoga County Grand Jury returned an indictment, charging Jones with rape and kidnapping.

Jones filed a motion to dismiss the indictment with prejudice in the Cuyahoga County Court of Common Pleas, based on unconstitutional preindictment delay. He argued that as a result of the state's delay in pursuing the indictment, his mother * * *, who S.W. alleged to have been present at the time of the alleged rape and who died in 2011, was no longer an available witness. Jones also argued that he is prejudiced by the unavailability of S.W.'s 911 call and any physical evidence, including S.W.'s clothing. Jones argued that the delay was not justified because, Jones asserts, contrary to the supposed inability to locate S.W., the Cleveland Police Department arrested S.W. on numerous occasions subsequent to the alleged rape. And at a hearing on Jones's motion to dismiss, his attorney argued that the belated DNA match did not justify the delay because Jones's identity was not unknown. The trial court granted Jones's motion to dismiss, noting prejudice from the loss of physical evidence and the death of Jones's mother.

*Id*. at ¶ 2-8.

{¶3} On appeal, we must apply the proper framework for analyzing claims of preindictment delay. Under the burden-shifting framework for analyzing a due-process claim based on preindictment delay, a defendant is required to present evidence of actual prejudice before the burden shifts to the state to produce evidence of a justifiable reason for the delay. *Jones*, Slip Opinion No. 2016-Ohio-5105 at ¶ 13, citing *Whiting*, 84 Ohio St.3d 215, 217, 1998-Ohio-575, 702 N.E.2d 1199.

{¶4} In *Jones*, the Ohio Supreme Court referred to *Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097, for guidance regarding the actual-prejudice standard. *Jones* at ¶ 24-25. In *Luck*, one of the deceased witnesses was purportedly with Luck at the time of the

murder for which Luck had been accused and was reportedly "the one person who could have helped her in [the] matter[.]" *Luck* at 157. Although there was no testimony establishing what the witness would have actually testified to at trial, the court found that Luck had been prejudiced by the inability to seek verification of her story from the deceased witness and thereby establish mitigating factors or a defense to the charges against her. *Id.* at 157-158. After reviewing the *Luck* decision, the Ohio Supreme Court in *Jones* recognized that "the proven unavailability of specific evidence or testimony that would attack the credibility or weight of the state's evidence against a defendant, and thereby aid in establishing a defense, may satisfy the due-process requirement of actual prejudice." *Jones* at ¶ 25.

{¶5} However, "the death of a potential witness will not always constitute actual prejudice." *Jones*, Slip Opinion No. 2016-Ohio-5105, at ¶ 26, citing *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 99. In determining actual prejudice, a court must balance the unavailable evidence in light of the other evidence available at the time of the indictment and in light of its relevance to the defense. *Jones* at ¶ 26. "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense." *Id.* at ¶ 28. Thus, a defendant must demonstrate a viable, tangible connection between the missing evidence or the unavailable witness to the defense of the case. *State v. Richardson*, 8th Dist. Cuyahoga No. 103925, 2016-Ohio-5843, ¶ 13.

{¶6} Jones contends that he was prejudiced by the preindictment delay because his mother, who was placed in the home at the time of the alleged crime, is no longer available to testify. Although Jones offered an explanation of what exculpatory testimony the witness might have offered, the unavailable evidence must be balanced against the evidence at the time of the indictment to determine whether Jones would suffer actual prejudice. *See Jones* at ¶ 24.

{¶7} We note that the trial court never engaged in an appropriate balancing test for gauging actual prejudice and much of the trial court's opinion was focused upon the lack of police investigation when the identity of the defendant was always known.[2,3] Although the court recognized the loss of Jones's mother as a witness, the trial court did not consider the impact of another witness also having been present in the home.

{¶8} Unlike the case in *Luck*, in this case there was more than one witness identified as having been present at the time of the alleged offense. The victim claimed that Jones's brother was also present. Although the brother's whereabouts have yet to be determined, Jones offered nothing to establish that this potential witness would be unavailable to testify or to contradict the identification of this individual as Jones's brother. Thus, it is conceivable that the mother's testimony would have been cumulative

---

[2] In fairness to the trial court, we recognize that at the time it issued its decision, the appropriate standard had not been clarified and the court did not have the benefit of the *Jones* decision.

[3] Although we believe the lack of a distinction between cases involving alleged perpetrators whose identities have always been known and those involving unknown perpetrators is problematic, the legislature has not drawn any distinctions with regard to the applicable statute of limitations.

to other evidence available at the time of the indictment. For this reason, Jones has not shown that the loss of his mother as a potential witness would minimize or eliminate the impact of the state's evidence and bolster his defense.

{¶9} Also, Jones's reliance upon the loss of the victim's clothing is a red herring. There is no evidence that the supposed missing evidence was preserved by the police investigation, and therefore, the missing evidence cannot be said to have been a result of the delay. The missing evidence may be evidence of an incomplete investigation, but that defense would have existed regardless of the passage of time. A claim of actual prejudice is to be scrutinized "vis-à-vis the particular evidence that was lost or unavailable *as a result of the delay*" and considered with regard to "the relevance of the lost evidence and its purported effect on the defense." (Emphasis added.) *Jones* at ¶ 23.

{¶10} It is the defendant's burden "to establish actual prejudice — separate from the state's reasons for the delay — before the burden shifts to the state to justify its delay." *Jones*, Slip Opinion No. 2016-Ohio-5105, at ¶ 14. Upon the record presented, Jones failed to demonstrate actual prejudice. Therefore, the trial court's decision must be reversed and the case remanded for further proceedings.

{¶11} Judgment reversed; case remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common

pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

TIM McCORMACK, J., CONCURS;
LARRY A. JONES, SR., P.J., DISSENTS WITH SEPARATE OPINION

LARRY A. JONES, SR., P.J., DISSENTING:

{¶12} Respectfully, I dissent. I would affirm the trial court's finding that Jones suffered actual prejudice based on preindictment delay.

{¶13} Determining whether actual prejudice has occurred is "a delicate judgment"[4] and a defendant asserting actual prejudice because of preindictment delay must be specific as to what the actual prejudice is. I disagree with the majority that Jones has failed to do so.

{¶14} Jones contends that because of the nearly 20-year delay in prosecuting this case, a key witness and physical evidence has been lost. Specifically, as to the key witness, the victim reported that Jones's mother and brother had been in the apartment at the time of the alleged rape and "should have heard it." At the time of indictment, his mother was deceased, however. As to the physical evidence, Jones contends that the

_____
[4] *United States v. Marion*, 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

victim's clothing and photographic evidence, which he claimed would not show signs of a struggle, were no longer available.

{¶15} I recognize that the death of a potential witness will not always create actual prejudice. *State v. Jones*, Slip Opinion No. 2016-Ohio-5105, ¶ 26. But the actual prejudice burden is a difficult one for defendants because "proof of prejudice is always speculative." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 100. Jones's "proffer" of his mother's testimony was that she might have testified that she did not hear any screams by the victim or other noises that would have indicated a struggle between him and the victim. There is also the possibility that she would have testified as to the nature of Jones's and the victim's relationship. I disagree with the majority's insinuation that the "proffered" testimony, when balanced against the other evidence available at the time of indictment, does not establish actual prejudice.[5]

{¶16} I also disagree with the majority's insinuation that the lack of physical evidence — namely, photographs of the alleged crime scene or the victim's clothing — were for reasons other than the delay. The evidence was not preserved because the case was closed approximately one week after the alleged rape. Thus, I believe that physical evidence did not exist at the time of indictment because of the delay.

{¶17} Further, although the second part of the preindictment delay test, that is, whether the state produced evidence of a justifiable delay, was not at issue in this appeal,

---

[5] I note that "other evidence" that would generally be present in a rape case, such as the victim's clothing and photographs of the alleged crime scene, was not preserved in this case.

I do not believe that this record supports a finding of any investigative delay, as the state contends. Rather, as mentioned, the case was closed shortly after the alleged rape and sat dormant for the next almost 20 years.

{¶18} In light of the above, I respectfully dissent and believe the trial court's judgment dismissing the case based on preindictment delay should be affirmed.