[Cite as *State v. Lynch*, 2018-Ohio-1078.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 105122

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**CORNELIUS LYNCH**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-585501-A

**BEFORE:** Celebrezze, J., Keough, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** March 22, 2018

ATTORNEYS FOR APPELLANT

Mark Stanton
Cuyahoga County Public Defender
BY:     Jeffrey Gamso
Assistant Public Defender
Courthouse Square, Suite 200
310 Lakeside Avenue
Cleveland, Ohio 44113


ATTORNEYS FOR APPELLEE

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:     Edward R. Fadel
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Cornelius Lynch ("Lynch"), brings this appeal challenging his convictions for rape and kidnapping. Specifically, Lynch argues that the trial court erred by denying his motions to dismiss the indictment based on preindictment delay, the state engaged in prosecutorial misconduct, he was denied the effective assistance of counsel, and that the charges should have been dismissed based on double jeopardy grounds. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} The instant appeal arose from an incident that occurred between Lynch and his girlfriend's daughter, M.H. At the time of the incident, M.H. was 12 years old, and Lynch had

been living with his girlfriend, S.P., and M.H. for a few years. M.H. alleged that Lynch sexually assaulted her on May 26, 1994. M.H. reported the incident to her mother the next morning, and M.H. went to the hospital where a rape kit examination was performed. M.H. spoke with hospital staff and the police about the incident, and she indicated that Lynch was her assailant. Cuyahoga County Division of Children and Family Services ("CCDCFS") investigators also interviewed M.H. and Lynch. Approximately two weeks later, M.H. recanted her allegations against Lynch.

{¶3} Although M.H. recanted her allegations, her rape kit was submitted to the Ohio Bureau of Criminal Investigation ("BCI") for DNA testing in August 2012. DNA testing established that Lynch could not be excluded as the source of semen on the vaginal swab from the rape kit.

{¶4} After learning of the DNA match, investigators reinterviewed M.H. and S.P. M.H. informed the investigators that Lynch assaulted her in May 1994.

{¶5} On May 15, 2014, in Cuyahoga C.P. No. CR-14-585501-A, the Cuyahoga County Grand Jury returned a three-count indictment charging Lynch with (1) rape, a first-degree felony in violation of R.C. 2907.02(A)(1)(b), with a furthermore specification alleging that Lynch purposely compelled the victim to submit by force or threat of force, (2) rape, a first-degree felony in violation of R.C. 2907.02(A)(1)(b), and (3) kidnapping, a first-degree felony in violation of R.C. 2905.01(A)(4). Count 1 alleged that Lynch engaged in vaginal intercourse with M.H., and Count 2 alleged that Lynch engaged in cunnilingus with M.H. Lynch was arraigned on May 30, 2014. He pled not guilty to the indictment. Shortly after Lynch was indicted, S.P. died.

{¶6} Lynch's counsel filed a motion to withdraw on July 2, 2014. The trial court

granted counsel's motion, and the court assigned a new attorney to represent Lynch on July 9, 2014.

{¶7} On October 31, 2014, Lynch's counsel filed motions for independent DNA analysis and to dismiss the indictment based on preindictment delay. Lynch's counsel filed a supplemental motion to dismiss based on preindictment delay on November 17, 2014. On February 12, 2015, the trial court denied defense counsel's motion to dismiss.

{¶8} On August 5, 2015, Lynch's counsel filed a motion for reconsideration of the motion to dismiss for preindictment delay. The trial court denied defense counsel's motion for reconsideration on October 2, 2015.

{¶9} On February 2, 2016, Lynch's counsel filed a second supplemental motion to dismiss based on preindictment delay. On February 12, 2016, the trial court denied defense counsel's motion to dismiss.

{¶10} A jury trial commenced on March 7, 2016. On March 10, 2016, the trial court declared a mistrial based on an issue that arose with one of the 12 jurors. On March 11, 2016, Lynch's second attorney filed a motion to withdraw as counsel. The trial court granted counsel's motion, and the court assigned a new attorney to represent Lynch on March 17, 2016.

{¶11} On September 9, 2016, Lynch's counsel filed a motion to reconsider the defense's previous motions to dismiss based on preindictment delay. After holding a hearing, the trial court denied the motion to reconsider on September 13, 2016.

{¶12} A second jury trial commenced on September 15, 2016. At the close of trial, the jury found Lynch guilty on all three counts on September 20, 2016. The trial court referred Lynch to the probation department for a presentence investigation report and set the matter for sentencing.

{¶13} The trial court held a sentencing hearing on October 20, 2016. The trial court merged Counts 1 and 3 for sentencing purposes. The state elected to sentence Lynch on Count 1. The trial court imposed a prison term of 15 years to life on Count 1, and a prison term of 15 years to life on Count 2. The trial court ordered the counts to run concurrently. The trial court found Lynch to be a sexually oriented offender and reviewed his reporting requirements.

{¶14} On November 1, 2016, Lynch filed the instant appeal challenging his convictions. He assigns four errors for review, which we will address out of order for ease of discussion:

> I. [Lynch's] rights to due process and a fair trial were violated when the trial court denied his motion to dismiss for pre-indictment delay and then denied his motion to reconsider that ruling.

> II. Prosecutorial misconduct encouraging the jury to convict based on sympathy for M.H. violated [Lynch's] constitutional rights to a fair trial and due process and to be convicted based only on the evidence against him.

> III. Counsel provided constitutionally ineffective assistance when he failed to object to the prosecutor's improper argument as set forth in the [s]econd [a]ssignment of [e]rror.

> IV. Because there was no manifest necessity for the trial court to grant a mistrial, the constitutional protection against being twice put in jeopardy for the same offense required that the charges against [Lynch] be dismissed.

## II. Law and Analysis

### A. Preindictment Delay

{¶15} In his first assignment of error, Lynch argues that the trial court erred by denying his motions to dismiss the indictment based on preindictment delay.

{¶16} The statute of limitations for a criminal offense is a defendant's primary protection against overly stale criminal charges. *U.S. v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). However, in some circumstances, the Due Process Clause of the Fifth

Amendment provides limited protection against preindictment delay. *U.S. v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). The Ohio Supreme Court has held that "[a]n unjustifiable delay between the commission of an offense and a defendant's indictment therefor[e], which results in actual prejudice to the defendant, is a violation of the right to due process of law." *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus.

{¶17} The Ohio Supreme Court recently reaffirmed a two-part, burden-shifting test to determine whether preindictment delay constitutes a due process violation. *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 13 ("*Jones I*"). First, the burden is on the defendant to present evidence of actual prejudice; once a defendant does so, the burden then shifts to the state to produce evidence of a justifiable reason for the delay. *Id*. at ¶ 13, citing *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998). "A court must determine whether the defendant has established actual prejudice to his ability to defend himself before independently determining whether the state met its burden of establishing a justifiable reason for the delay in bringing charges." *State v. Hunter,* 8th Dist. Cuyahoga No. 104789, 2017-Ohio-4180, ¶ 11, citing *Jones I* at ¶ 16-18, 29.

> A determination of actual prejudice involves "'a delicate judgment'" and a case-by-case consideration of the particular circumstances. *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52, quoting [*Marion* at 325]. A court must "consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay." *Id*. [The Ohio Supreme Court] has suggested that speculative prejudice does not satisfy the defendant's burden. *Id*. at ¶ 56 (noting that Walls's claims of prejudice were speculative at best); [*State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 100] (noting the difficulty for defendants claiming unconstitutional preindictment delay because "proof of prejudice is always speculative").
>
> The "*possibility* that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice." (Emphasis

[sic].)  *Id*. at ¶ 105, citing *Marion* at 325-326.  Those are "the real possibilit[ies] of prejudice inherent in any extended delay," and statutes of limitations sufficiently protect against them.  *Marion* at 326.  That does not mean, however, that demonstrably faded memories and actually unavailable witnesses or lost evidence cannot satisfy the actual-prejudice requirement.

*Jones I* at ¶ 20-21.

{¶18} In the instant matter, during the trial court's September 13, 2016 hearing on appellant's motion to reconsider, defense counsel argued that Lynch suffered actual prejudice as a result of the significant delay in prosecution.  Specifically, defense counsel explained that "the main reason for the actual prejudice [is] the death of [S.P.] * * * she made statements at the time of the incident letting at least hospital personnel know as well as police that she did not believe [M.H.] was telling the truth."  (Tr. 581.)  Defense counsel further asserted that the state was unable to show that the delay in prosecution was reasonable.  The state argued that S.P.'s unavailable testimony would not be exculpatory due to the DNA evidence linking Lynch to M.H.'s rape kit.  The state explained that the police ceased the active investigation in 1994 because M.H. recanted her allegations against Lynch, and that the case was reopened when the prosecution received the new DNA evidence linking Lynch to the rape kit.

{¶19} The trial court indicated that it reviewed the case law set forth in *Jones I*, *State v. Jones*, 8th Dist. Cuyahoga No. 101258, 2017-Ohio-176 ("*Jones II*"), *Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097, and *Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199.  In denying defense counsel's motion to reconsider, the trial court found the facts of this case to be distinguishable from *Jones II*.  The trial court concluded, "I'm not convinced that actual prejudice has occurred from the delay.  Even if we get to, you know, the point of actual prejudice in this case.  In looking at it when the burden shifts to the State to show that it was not unjustifiable, you know, based on the facts here, I do find that a delay was justifiable anyway."  (Tr. 596-597.)

**{¶20}** In reviewing a trial court's decision on a motion to dismiss for preindictment delay, this court applies a de novo standard of review to the legal issues, but we afford great deference to the trial court's findings of fact. *Hunter*, 8th Dist. Cuyahoga No. 104789, 2017-Ohio-4180, at ¶ 16, citing *State v. Smith*, 8th Dist. Cuyahoga No. 100501, 2014-Ohio-3034, ¶ 23, and *State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 45.

**{¶21}** In the instant matter, Lynch argues that he was prejudiced by the preindictment delay because S.P. passed away and, thus, was not available to testify; CCDCFS records were lost; and information regarding the rape kit's chain of custody was lost.

**{¶22}** First, regarding S.P.'s lost testimony, Lynch asserts that (1) S.P. knew that M.H.'s allegations could not be true; (2) S.P. told the hospital personnel that Lynch was in bed with her at the time that M.H. alleged he raped her; and (3) S.P. opined that M.H. likely made up the allegations because she did not want Lynch to marry her.

**{¶23}** Second, regarding the lost CCDCFS records, Lynch argues that there are no records of the investigation or notes from the interviews conducted by CCDCFS investigators. The only CCDCFS record available is an incident report indicating that M.H.'s allegation was unsubstantiated. Lynch asserts that these notes and records "would contain further information tending to throw doubt on M.H.'s claims." Appellant's brief at 5.

**{¶24}** Third, regarding the lost chain of custody information, Lynch argues that there is no information about how the rape kit was stored by the Cleveland Police Department in the Fourth District's property room or how it was transported to the main property room downtown. He contends that this information is important because there was not a complete DNA profile extracted from the semen from M.H.'s vagina in the rape kit.

**{¶25}** After reviewing the record, we find that Lynch fails to demonstrate actual

prejudice. Although Lynch offered an explanation of what purportedly exculpatory testimony S.P. would have offered, the unavailable testimony must be balanced against the evidence at the time of the indictment to determine whether Lynch would suffer actual prejudice. *Jones II*, 8th Dist. Cuyahoga No. 101258, 2017-Ohio-176, at ¶ 6, citing *Jones I*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 24.

{¶26} As noted above, the DNA evidence available at the time of the indictment revealed that Lynch could not be excluded as the source of semen on the vaginal swab from M.H.'s rape kit. We cannot say that S.P.'s testimony that the allegations against Lynch could not be true would minimize or eliminate the impact of the DNA evidence and bolster the defense. Furthermore, Lynch fails to demonstrate actual prejudice by speculating that he could have asserted an alibi based on S.P.'s testimony that he was in bed with her at the time M.H. alleged that he raped her.

{¶27} Although S.P. was not available to testify at trial, Lynch acknowledges that "[w]e know much of what [S.P.] would have testified to from her statements as they appear in [M.H.'s] medical record from the hospital at the time they took the rape kit." Appellant's brief at 4. Regarding S.P.'s unavailable testimony about M.H.'s motive for fabricating the allegations, the record reflects that Lynch was available to testify, and did, in fact, testify about any motives M.H. may have had for fabricating the allegations. Lynch testified that S.P.'s children did not care for him, did not want him in the home, and wanted S.P. to be with their father rather than Lynch. Accordingly, S.P.'s testimony on this point would have been cumulative to Lynch's testimony.

{¶28} Lynch's claim of prejudice regarding the loss of CCDCFS records or notes is speculative at best. He presumes that the CCDCFS investigators took notes during the interviews of M.H. and Lynch, and retained these notes in the case file. As noted above, M.H.

recanted her allegations against Lynch approximately two weeks after the May 26, 1994 incident. Lynch asserts that the missing CCDCFS records "would provide a concrete explanation of why there was no basis for the prosecution." Appellant's reply brief at 5. Lynch presumes that the CCDCFS records or notes contained a "concrete explanation" — other than the fact that M.H. recanted — as to why the allegations were found to be unsubstantiated.

{¶29} Lynch's claim of prejudice regarding the loss of chain of custody information is also speculative. There is no evidence that the information regarding the storage conditions at the Fourth District or how the rape kit was transported to the main property room was initially preserved but subsequently lost as a result of the delay. The missing information may be evidence of an incomplete chain of custody; however, this defense would have existed regardless of the passage of time. *See Jones II*, 8th Dist. Cuyahoga No. 101258, 2017-Ohio-176, at ¶ 9. Furthermore, several witnesses — BCI forensic scientist Andrea Dennis, Cleveland Police Officer Alex Parente, BCI forensic scientist Marissa Keeley, Cleveland Police Detective Michael Moctezuma, and Cuyahoga County Prosecutor's Office Investigator Timothy Clark — were available to testify regarding the rape kit's collection, sealing, storage, and transportation.

{¶30} Assuming, arguendo, that Lynch sufficiently demonstrated actual prejudice, we find that the trial court properly determined that the delay in prosecution was justified.

{¶31} Lynch argues that the state's delay in bringing the charges against him was not justifiable because M.H. identified Lynch as her rapist both to S.P. and the police, and the police and prosecution allowed the rape kit to sit untested for 18 years. We disagree.

{¶32} The record reflects that the delay was a result of M.H. recanting her rape allegation approximately two weeks after reporting the allegation to her mother and the police in May 1994. Although a rape kit was conducted at the time of the incident, DNA evidence was not

discovered until 2014 when the rape kit was tested by BCI. The DNA evidence establishing that Lynch could not be excluded as a contributor to the DNA profile from M.H.'s rape kit was "new evidence" that justified the delayed indictment.

{¶33} Based on the foregoing analysis, Lynch's first assignment of error is overruled.

## B. Prosecutorial Misconduct

{¶34} In his second assignment of error, Lynch argues that he was deprived of his constitutional rights to a fair trial and due process when the prosecutor engaged in misconduct during closing arguments.

{¶35} Closing arguments must be viewed in their entirety to determine whether the disputed remarks were prejudicial. *State v. Mann*, 93 Ohio App.3d 301, 312, 638 N.E.2d 585 (8th Dist.1993). An appellant is only entitled to a new trial when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. *State v. Pate*, 8th Dist. Cuyahoga No. 95382, 2011-Ohio-1692, ¶ 19, citing *State v. Smith*, 14 Ohio St.3d 13, 470 N.E.2d 883 (1984).

{¶36} A prosecutor has a duty in closing argument to avoid efforts to obtain a conviction by going beyond the evidence before the jury. *Smith* at 14. "Prosecutors must avoid insinuations and assertions calculated to mislead. They may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence." *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990). However, "'[i]n the tension and turmoil of a trial, both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom.'" *Id.* at 165, quoting *State v. Stephens*, 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970). *See also State v. Ballew*, 76 Ohio St.3d 244, 667 N.E.2d 369 (1996) (the prosecutor is

entitled to some latitude in closing argument as to what the evidence presented has shown).

{¶37} The test for prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Smith*, 87 Ohio St.3d 424, 442, 721 N.E.2d 93 (2000), citing *Smith*, 14 Ohio St.3d at 14, 470 N.E.2d 883. The touchstone of analysis "is the fairness of the trial, not the culpability of the prosecutor." *Id.*, citing *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶38} In the instant matter, Lynch takes issue with the prosecutor's comments about the rape kit examination procedure that M.H. went through at the hospital after disclosing the allegations against Lynch to her mother. During closing arguments, the prosecutor stated, in relevant part,

> Now, let's talk about what happened to [M.H.] as a result of her disclosing what [Lynch] did to her.
>
> When she said what he did, when she said what he did, this is what happened to her. She had to go to the hospital. As a 12-year-old girl, she had to have her legs up in stirrups with her knees apart, a speculum inserted into her vagina, swabs stuck five to six centimeters into her vagina, swabbing her vagina, and swabbing her cervix. That's what happened as a result of [M.H.] telling her mom what [Lynch] did to her.

(Tr. 1284.) The prosecutor continued, "[a]t the hospital [M.H.] says who did this to her. Cornelius Lynch. And [Dr. Keith Lim] puts her in the stirrups, and he has her spread her legs. He has to insert a speculum into a child, all things [M.H.] had to endure for telling people what [Lynch] did to her[.]" (Tr. 1287.)

{¶39} Lynch argues that "[t]here was no proper reason, no justification for [the prosecutor's] gratuitous statements to the jury. [The statements'] purpose, their only purpose, was to inflame, to prejudice, to create sympathy for M.H. And that is an improper purpose."

Appellant's brief at 8.    We disagree.

**{¶40}** Initially, we note that defense counsel did not object to the prosecutor's statements about the rape kit examination procedure.    Accordingly, Lynch has waived the issue on appeal except for plain error.    *Pate*, 8th Dist. Cuyahoga No. 95382, 2011-Ohio-1692, at ¶ 21, citing *State v. Owens*, 51 Ohio App.2d 132, 146, 366 N.E.2d 1367 (9th Dist.1975).    *Accord State v. Harris*, 8th Dist. Cuyahoga No. 104329, 2017-Ohio-2751, ¶ 83.    Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."    Moreover, "[p]lain error does not exist unless, but for the error, the outcome at trial would have been different."    *State v. Joseph*, 73 Ohio St.3d 450, 455, 653 N.E.2d 285 (1995), citing *State v. Moreland*, 50 Ohio St.3d 58, 552 N.E.2d 894 (1990).

**{¶41}** One of the defense's theories of the case was that M.H. made up the allegations against Lynch because she did not want her mother to marry him.    On direct examination, Lynch testified that there was stress and tension in the home, both before and after M.H. alleged that he raped her.    He explained that S.P.'s children did not care for him, did not want him in the home, and wanted S.P. to be with their father.    During closing arguments, defense counsel stated that when S.P. took M.H. to the hospital, S.P. told the doctors that she was sure that M.H. made up the allegations against Lynch "because [her children] want [S.P.] to get back with their natural father[.]"    (Tr. 1304-1305.)    Defense counsel further explained that while S.P. was going to marry Lynch, her children did not want him around and wanted him out of the house.

**{¶42}** After reviewing the record and the purportedly improper remarks in context, we cannot say that prosecution's comments about the rape kit examination procedure were improper.  The prosecutor's comments about the rape kit examination procedure were made to rebut the defense's theory that M.H. fabricated the allegations and to support the prosecution's theory that

Lynch did, in fact, rape M.H. Furthermore, the prosecutor's comments were supported by evidence in the record.

**{¶43}** M.H. testified that her mother took her to the hospital where an examination was performed "[i]n [her] vagina area." (Tr. 1066.) Dr. Lim testified that he conducted M.H.'s rape kit examination and he described the procedure in detail. Based on this evidence, the prosecutor reasonably inferred that M.H. would not assent to or endure an invasive rape kit examination if she made up the allegations. The prosecutor's comments fairly represented the state's interpretation of the evidence that it presented during trial, and the prosecutor is entitled to latitude to argue the state's interpretation of the evidence. *See State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 172.

**{¶44}** Finally, the trial court instructed the jury that it must decide the case based on the evidence presented and that "closing arguments do not constitute evidence." (Tr. 1322.) We presume that the jury heeded the trial court's instructions. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 157.

**{¶45}** Based on the foregoing analysis, Lynch's second assignment of error is overruled.

### C. Double Jeopardy

**{¶46}** In his fourth assignment of error, Lynch argues that the charges against him should have been dismissed because there was not a manifest necessity for declaring a mistrial in the first prosecution.

**{¶47}** While the jury was deliberating in the first trial, the trial court received a note from the foreperson that indicated an issue arose with one of the jurors. Specifically, the note indicated that Juror 7 was "exhibiting very serious signs of mental or emotional problems. He will not let anyone else speak, constantly interrupts, makes threats, slurring his words and

admitted, 'I'm having problem with my head.' Also he demands the transcripts." (Tr. 513.) The trial court shared the note with the parties and made it a part of the record. The trial court had already excused the alternate juror at the time it received the note. The trial court questioned the foreperson to learn more about the issue and to determine whether the issue had been resolved.

{¶48} The foreperson stated that Juror 7 was interrupting other jurors and not letting anybody speak. (Tr. 516.) The foreperson further explained that Juror 7 also made threats to both the jury as a whole and to specific individual jurors, was slurring his words and incoherent, and engaging in other disruptive conduct. (Tr. 516.) The foreperson stated that two of the jurors indicated that they do not feel safe in the deliberation room with Juror 7. (Tr. 517.) Juror 7 was adamant about using the notes he took throughout the trial although the trial court instructed the jurors not to do so.

{¶49} The trial court questioned Juror 7 about these issues. Furthermore, the trial court questioned the individual jurors separately about the issue.

{¶50} After polling the individual jurors, the trial court concluded that Juror 7 "is unable to follow the instructions given by the Court, is unable to live up to his oath as a juror. And I don't think that leaving this juror on that jury, that they can come to a fair and just resolution in this case." (Tr. 571.) Before deciding whether to declare a mistrial, the trial court attempted to contact the alternate juror that had been previously discharged. The trial court was unable to reach the alternate juror, and as a result, declared a mistrial.

{¶51} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects a criminal defendant from multiple prosecutions for the same offense. *Oregon v. Kennedy*, 456

U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). The Double Jeopardy Clause does not, however, bar reprosecution in every case. Where a defendant requests a mistrial, double jeopardy does not bar a retrial unless the defendant's request for a mistrial is precipitated by prosecutorial misconduct intended to provoke a defendant into seeking a mistrial. *N. Olmsted v. Himes*, 8th Dist. Cuyahoga Nos. 84076 and 84078, 2004-Ohio-4241, ¶ 36-37.

{¶52} In the instant matter, we initially find no merit to Lynch's assertion that he explicitly objected to the trial court declaring a mistrial. In fact, the record reflects that defense counsel requested a mistrial after the foreperson informed the trial court about the issues that arose with Juror 7: "Your Honor, I would — I think we're in a position now — with the alternate being excused yesterday, I think we're in the same position we would be in with a hung jury, and I would request a mistrial[.]" (Tr. 518.) Defense counsel reiterated this request while the trial court was polling the individual jurors about these issues: "Your Honor, we're asking for a mistrial." (Tr. 552.)

{¶53} Lynch appeared to disagree with defense counsel's request for a mistrial. When counsel stated that the defense was asking for a mistrial, Lynch asserted, "[n]o, no, we're not." (Tr. 553.) In his appellate brief, Lynch appears to suggest that this statement demonstrates that he wanted to proceed with 11 jurors.

{¶54} It is well established that "although a defendant has the right to counsel or the right to act pro se, a defendant does not have any right to 'hybrid representation.'" *State v. Mongo*, 8th Dist. Cuyahoga No. 100926, 2015-Ohio-1139, ¶ 13, quoting *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 29. This court has explained, "when counsel represents a criminal defendant, a trial court may not entertain a defendant's pro se motion." *Mongo* at ¶ 14.

**{¶55}** Lynch was represented by counsel in the first prosecution, and thus, the trial court could not entertain Lynch's pro se objection to granting a mistrial. Furthermore, when the trial court declared a mistrial, neither defense counsel nor Lynch objected. Lynch does not argue nor does the record indicate that the state invited a mistrial. Accordingly, the Double Jeopardy Clause does not bar a second prosecution.

**{¶56}** Assuming, arguendo, that Lynch objected to a mistrial, the record reflects that a manifest necessity existed for the mistrial.

> Where a defendant objects to a mistrial, the defendant may be retried if "manifest necessity" exists for the mistrial, *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 25, or if "'the ends of public justice would otherwise be defeated.'" *State v. Glover*, 35 Ohio St.3d 18, 19, 517 N.E.2d 900, quoting *State v. Widner*, 68 Ohio St.2d 188, 189, 429 N.E.2d 1065 (1981), citing [*Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978)]. "Manifest necessity" means a "high degree" of necessity must exist before a mistrial may properly be declared. However, it does not require a showing that a mistrial was "absolutely necessary" or that there was no other alternative but to declare a mistrial. *Washington* at 511.
>
> There is no "mechanical formula" for determining what constitutes a "manifest necessity" for a mistrial: "[T]he manifest-necessity standard 'abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial.'" [*Gunnell* at ¶ 27], quoting *Illinois v. Somerville*, 410 U.S. 458, 462, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). What constitutes a manifest necessity for a mistrial is, therefore, left to the discretion of the trial court to be decided on a case-by-case basis, taking into account all the relevant circumstances.

*State v. Marshall*, 2014-Ohio-4677, 22 N.E.3d 207, ¶ 21-22 (8th Dist.).

**{¶57}** Lynch argues that there was no manifest necessity for the trial court to declare a mistrial. In support of his argument, Lynch suggests that although the alternate juror had been discharged, the alternate could have been brought back. Lynch asserts that the trial court failed to investigate the possibility of bringing back the alternate. These arguments are unsupported

by the record.

{¶58} The record reflects that the trial court made multiple attempts to reach the alternate juror. The jury commissioner attempted to contact the alternate juror, left the alternate a voicemail, and told the alternate to return the phone call. (Tr. 520.) Before declaring a mistrial, the trial court stated, "I would like to see if the alternate is available," and "I'm going to * * * see if we can get ahold of the alternate, if the alternate is available." (Tr. 530, 566.) When the trial court declared a mistrial, it explained, "we don't have the alternate here to replace [Juror 7] with an alternate. It's my understanding the alternate was discharged from jury service yesterday after the Court had let the alternate go from this trial, prior to this jury's deliberations." (Tr. 571.)

{¶59} After review, we find that the trial court acted reasonably in determining that a manifest necessity existed for the declaration of a mistrial. The record reflects that the trial court exercised sound discretion in determining that Juror 7 was unable to follow the court's instructions and perform his duty. After learning about the issues that arose with Juror 7, the trial court conducted a thorough inquiry, questioning the foreperson, Juror 7, and each juror separately. The trial court permitted defense counsel and the prosecution to question the jurors as well. Furthermore, before deciding to discharge Juror 7 or declare a mistrial, the trial court made multiple attempts to reach the alternate juror. The trial court only declared a mistrial after determining that (1) the jury would not be able to reach a fair and just resolution in the case with Juror 7 on the panel and (2) the alternate juror could not be reached. Accordingly, the trial court did not abuse its discretion by determining that there was a manifest necessity to declare a mistrial.

{¶60} Finally, Lynch cites *State v. Davis*, 8th Dist. Cuyahoga No. 91324,

2009-Ohio-5217, for the proposition that the case could have and should have gone forward with 11 jurors rather than the trial court declaring a mistrial. In *Davis*, both the defendant and the state consented to proceeding with an 11-person jury. *Id*. at ¶ 17. In this case, neither Lynch nor the state requested or consented to proceeding with 11 jurors. Accordingly, Lynch's reliance on *Davis* is misplaced.

**{¶61}** Based on the foregoing analysis, Lynch's fourth assignment of error is overruled.

### D. Ineffective Assistance of Counsel

**{¶62}** In his third assignment of error, Lynch argues that his trial counsel provided ineffective assistance.

**{¶63}** In order to establish a claim of ineffective assistance of counsel, appellant must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Ohio, every properly licensed attorney is presumed to be competent and, thus, a defendant claiming ineffective assistance of counsel bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). In determining whether the defendant has been denied the effective assistance of counsel, the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus.

**{¶64}** In the instant matter, Lynch first argues that counsel provided ineffective assistance by failing to object to the prosecutor's comments during closing arguments about the rape kit examination procedure. Based on our resolution of Lynch's second assignment of error, we cannot say that counsel provided ineffective assistance by failing to object to the prosecutor's

comments about the rape kit examination. Having found that the prosecutor's comments were not improper, we cannot say that counsel's failure to object to the comments prejudiced Lynch. *See State v. Peterson*, 8th Dist. Cuyahoga Nos. 100897 and 100899, 2015-Ohio-1013, ¶ 157; *State v. Hill*, 8th Dist. Cuyahoga No. 95379, 2011-Ohio-2523, ¶ 42.

**{¶65}** Lynch further argues that counsel provided ineffective assistance by failing to move to dismiss the case on double jeopardy grounds after the first prosecution was declared a mistrial. Based on our resolution of Lynch's fourth assignment of error, we cannot say that counsel provided ineffective assistance by failing to move for a dismissal on double jeopardy grounds. As noted above, when the issues arose with Juror 7, defense counsel requested that the trial court declare a mistrial. There is nothing in the record indicating that the state invited the mistrial. Furthermore, the trial court did not abuse its discretion in determining that there was a manifest necessity to declare a mistrial. The trial court determined that Juror 7 was unable to follow the court's instructions and perform his duty, and the court was unable to replace Juror 7 with an alternate juror.

**{¶66}** Based on the foregoing analysis, Lynch's third assignment of error is overruled.

### III. Conclusion

**{¶67}** After thoroughly reviewing the record, we find that the trial court did not err in denying Lynch's motions to dismiss for preindictment delay; the prosecutor did not commit misconduct during closing arguments; the trial court did not abuse its discretion by determining that there was a manifest necessity to declare a mistrial, and the second prosecution was not barred by the Double Jeopardy Clause; and Lynch was not denied his constitutional right to effective assistance of counsel.

**{¶68}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

KATHLEEN ANN KEOUGH, P.J., and
LARRY A. JONES, SR., J., CONCUR