[Cite as *State v. Kirby*, 2024-Ohio-1582.]

COURT OF APPEALS OF OHIO

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff- Appellee,         :
                             No. 112518

          v.                        :

ZINO KIRBY,                             :

    Defendant-Appellant.         :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 25, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-662722-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Michael Lisk, Assistant Prosecuting Attorney, *for appellee*.

Paul B. Daiker, *for appellant*.

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant Zino Kirby appeals his convictions for attempted rape and abduction. Because we find the trial court did not err in excluding evidence

at trial, Kirby's convictions were based on sufficient evidence, and those convictions were not against the manifest weight of the evidence, we affirm.

## PROCEDURAL HISTORY AND RELEVANT FACTS

### Procedural History of the Case and Kirby's Conviction

{¶ 2} On September 1, 2021, Kirby was charged in an indictment with four counts: attempted rape, a second-degree felony in violation of R.C. 2923.02 and 2907.02(A)(2); attempted rape, a second-degree felony in violation of R.C. 2923.02 and 2907.02(A)(2); kidnapping, a first-degree felony in violation of R.C. 2905.01(A)(4) with a sexual motivation specification in violation of R.C. 2941.147(A); and abduction, a third-degree felony in violation of R.C. 2905.02(B).

{¶ 3} On December 22, 2022, Kirby waived his right to a jury trial and tried his case to the bench. During trial, certain testimony was excluded pursuant to R.C. 2907.02(D) and 2907.02(E) (hereinafter referred to collectively as the "Rape Shield Statute"). On January 5, 2023, the trial court found Kirby guilty of two counts of attempted rape and abduction, acquitting him of the kidnapping charge. On February 15, 2023, the trial court determined the charges were allied offenses of similar import and imposed a sentence of community-control sanctions on one count of attempted rape.

### Trial Testimony

{¶ 4} The state presented M.M.; M.M's coworker; an investigator with the Cuyahoga County Prosecutor's Office; and a law enforcement officer as witnesses.

Kirby presented a defense, calling himself and another witness. The parties presented contrasting versions of what transpired; M.M. testified Kirby attempted to force her to perform oral sex on him; Kirby testified he had a consensual encounter with M.M.

{¶ 5} M.M. testified that she worked for Oriana House, a rehabilitation facility for offenders, monitoring and installing GPS tracking units for pretrial detainees and probationers in Cuyahoga County. Kirby was a release officer with whom she would interact. On the morning of July 26, 2021, M.M. received a referral from Kirby that GPS units were ready so she went to the release offices. There, she talked outside Kirby's office with a deputy court bailiff, Myron Lavender, about vacations.

{¶ 6} She and Lavender knocked on Kirby's door. Kirby opened it and asked M.M. to sit down. She entered, and Kirby shut the door and sat at his desk. M.M. said they had a conversation about vacations and that Kirby "randomly" said he was aroused. She testified she was leaning forward to pick up her tote bag and then Kirby, with his erect penis out of his pants, grabbed her tightly by the neck. She yanked back, and Kirby then grabbed her ponytail and told her to perform oral sex. She told him "no." Kirby's phone rang, and he let go of her to answer it. M.M. gathered her belongings and left the office.

{¶ 7} M.M testified she didn't disclose what happened to anyone that day, but did call her supervisor later to tell her that she did not want to go back to the jail. The next day, she told Tom Hilbert, her coworker about the incident. Hilbert

testified at trial that he works with M.M. at Oriana House and that the day after the incident, M.M. was not her normal self, instead she was subdued and quiet. Hilbert related that M.M. was crying. When she told him about a sexual assault, he said he encouraged her to report the incident. He also reported the incident to their program manager.

{¶ 8} During her testimony, M.M. testified that after the incident with Kirby, they exchanged text messages. Timothy Clark, a Cuyahoga County Prosecutor's Office special investigator, testified he retrieved those messages from M.M.'s phone. The messages were entered into evidence. They reveal that at 5:45 p.m. on the day of the incident, M.M. texted Kirby, writing:

> I thought you should know I felt uncomfortable with you pulling on my head to try to get you to suck your dick. Don't do that ever and we good. That not something I'm into and yeah no. You still got my word about not mentioning it to Veronica though.[1]

M.M. explained that she sent the message because she was told by her supervisor that she would have to go back to the justice center. Kirby replied to the text, writing, "My humblest apologies." M.M. said the next day, Kirby both called and texted her. In response to Kirby texting "Good morning," M.M. replied: "Not really, I'm, still a little triggered about yesterday. That wasn't okay. I felt violated on so many levels. Maybe later." Kirby replied: "It was not at all. It was definitely not cool. You deserve to hear an apology not read one. I have the utmost respect for you. But I

---

[1] Veronica was Kirby's fiancée.

will respect your space,  If you ever feel up to it, let me know if and when we can talk." Two days after the incident between them, Kirby texted M.M., stating, "Good morning.  I just want you to know I'm truly remorseful and I never intended to disrespect you.  That's not how you start a friendship.  Again apologize and I apologize for texting you."

{¶ 9}  In addition to the text messages, M.M. later taped two phone conversations she had with Kirby.  The trial court heard the conversations and ruled one not to be relevant to the trial.

{¶ 10} During cross-examination, Kirby's trial counsel asked M.M. for details of her conversations with Lavender and Kirby.  M.M. denied that the conversations about vacations led to other discussions, that they discussed any websites, or that she discussed any activities on her vacation.  The state objected to this line of questioning, and the objection was sustained.  Trial counsel also asked about discrepancies between M.M.'s testimony and prior statements to police.

{¶ 11} Cleveland Police Department Detective Daniel Flannery testified he was assigned to investigate M.M.'s complaint of sexual assault and that during his investigation, he met with M.M. and recorded two statements from her.   He also verified that M.M. and Kirby were present at the justice center at the time M.M. said the allegations occurred.

{¶ 12} Kirby called Myron Lavender to testify on his behalf.  Lavender testified that he was a bailiff at the municipal court and that on the day of the incident, he talked with M.M. and Kirby.  He said the conversation between the three

of them was about Put-in-Bay and how M.M. went there for vacation.  He testified M.M. told them that at Put-in-Bay, they put hot sauce on people's feet and that she liked to have her toes sucked.  The state objected, but the trial court allowed the statement, noting it wasn't probative and that the trial court would take the statement "for what it is."  Lavender testified they talked about a website called "Chaturbate"[2] as well as a certain female sex toy.

{¶ 13}  Kirby testified that on the day of the incident, he spoke with M.M. and Lavender in the hallway outside his office.  He said M.M. said she would be on vacation next week and that her toes would be in someone's mouth.  Kirby was asked if he learned anything during the conversation with M.M. that "piqued his interest." Kirby testified he learned M.M. was interested in starting a Chaturbate website.  The trial court told Kirby that he could not talk about "what things [M.M.] might like, sexually speaking."

{¶ 14}  Kirby said that after he talked with Lavender and M.M., he went into his office and that later he called M.M. to come to his office because he wanted to know more about what she was talking about in the hall.  Kirby said he let M.M. in his office and then sat at his desk.  M.M. handed him her phone that had a sexual video pulled up on the screen.  Kirby said he asked M.M. to close the door to his office and she did.  After seeing the video, he said he complimented her and handed the phone back.  M.M. then pulled up another picture and handed the phone back

---

[2] Chaturbate is a sexually explicit website.

to him.  Kirby described the picture as being of a sexual matter.  Kirby asked her if he could look through the pictures on the phone, and she allowed him to do so.

{¶ 15}  After seeing the pictures, Kirby said he told M.M. that he was sexually aroused.  He said M.M.  nodded "with a smile," so he asked if she wanted to see "it."  She "nodded," so he said he stood, pulled his penis out, and walked toward her.  He said M.M. "rubbed" and "stroked" his penis.  Kirby thought she wanted to perform oral sex so he told her to do so.  He then put his hand on the back of her head and pulled her towards him.  He said M.M. pulled away from him but continued to "stroke" him.  M.M. stopped, he went back to his desk and then heard someone walking in the hallway, so he put his penis back in his pants.  He said they then talked about "swinger" clubs.  He said he then he got up and engaged in sexual activity with M.M., stating he pulled back her ponytail, leaned down, kissed her on her neck, and began to rub her breasts.  He said that she lifted her shirt and he licked her breast and tried to rub her vagina.  M.M. stopped him, and they continued to talk.  He said the phone rang, and he answered it.  He told M.M. he had to get a delivery and would be right back, then left his office.

{¶ 16}  Kirby said he was "shocked" about the text from M.M. the next day and that he did not understand where it came from.  Kirby believed his encounter with M.M. was consensual and thought M.M. was upset because she regretted the encounter because he was engaged.  Kirby explained his apologies to M.M. were because he engaged in inappropriate behavior at work.

## Trial Court's Rulings Under the Rape Shield Statute

{¶ 17} During trial, Kirby's counsel sought to elicit specific testimony about conversations between M.M., Lavender, and Kirby. During M.M.'s testimony, trial counsel asked M.M. about the topics of conversation as well as information regarding pictures and videos on her phone. The state objected to the line of questioning, which, after a sidebar discussion, was sustained. Following the discussion, the trial court informed Kirby's counsel that a proffer could be made at a later point in time; no proffer of testimony was made part of the record.

{¶ 18} During Lavender's testimony, the trial court allowed Lavender to testify over the state's objection that M.M. "liked her toes sucked." Lavender also testified about M.M.'s interest in the website "Chaturbate." He also testified as to asking M.M. about a sex toy. During Kirby's testimony, he testified that during the conversation between he, Lavender, and M.M., she said that she was going on vacation and her toes would be in someone's mouth. The state objected, and the trial court struck the statement. The trial court said it did so "because [Kirby] was not allowed to tell [the trial court] about what she was talking about." Kirby's counsel attempted to ask him whether the discussion turned to the internet. The state again objected, and the court sustained that objection.

{¶ 19} Kirby testified that when he was talking with M.M., he "learned that she was interested in starting a Chaturbate web site." The state objected. The trial court told Kirby's counsel that "you can't talk about her — what things that she might like, sexually speaking" and that it didn't want another question where Kirby would

answer something regarding "sex about the victim."  A sidebar discussion was had and afterwards, the trial court informed Kirby that his counsel indicated Kirby would testify about being shown a sexually explicit video.  The trial court instructed him to refrain from describing details of the video.

## LAW AND ARGUMENT

### The Trial Court Did Not Abuse Its Discretion by Excluding Evidence at Trial Under the Rape Shield Statute

{¶ 20} Kirby's first assignment of error reads:

The trial court abused its discretion in its rulings concerning the interpretation and/or application of the Rape Shield Law.

{¶ 21} Kirby argues that the trial court improperly excluded testimony regarding conversations between Kirby, Lavender, and M.M. prior to the sexual assault for which he was found guilty as well as excluding testimony regarding the photos and videos Kirby alleges M.M. showed him and Lavender on her phone. Kirby argues the evidence he was attempting to elicit from Lavender and himself regarding the nature of the videos and pictures shown, discussion of sex toys, and sexual activity was relevant to the issue of his state of mind and whether M.M. consented to sexual activity.  Kirby further argues he did not intend this evidence to be used to impeach M.M.

{¶ 22} The state first argues that the evidence should have been excluded because Kirby's counsel failed to provide a notice of an intent to use evidence of the complainant's sexual activity prior to trial in violation of R.C. 2907.02(E).  The state next argues that the trial court properly excluded evidence under the Rape Shield

Statute and notes that the trial court allowed some testimony from Lavender and Kirby regarding M.M.'s sexual activity, her use of a pornographic site, and an interest in sex toys. Further, the state notes that the trial court heard Kirby's testimony that M.M. showed him explicit material.

{¶ 23} Ohio's Rape Shield Statute provides in pertinent part:

(D) Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or sexually transmitted disease or infection, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

(E) Prior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial.

R.C. 2907.02.

{¶ 24} Sexual conduct, sexual contact, and sexual activity as used in R.C. 2907.02 are defined as follows:

(A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

(B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock,

pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

(C) "Sexual activity" means sexual conduct or sexual contact, or both.

R.C. 2907.01

{¶ 25} The trial court has discretion to determine the admission or exclusion of evidence under the Rape Shield Statute in the first instance. *State v. Brisco*, 8th Dist. Cuyahoga No. 76125, 2000 Ohio App. LEXIS 3835, 13 (Aug. 24, 2000). As such, we review a trial court's decision to admit or exclude evidence under the Rape Shield Statute for an abuse of discretion. *State v. Dawson*, 2017-Ohio-965, 86 N.E.3d 672, ¶ 19 (8th Dist.), citing *State v. Miller,* 63 Ohio App.3d 479, 483, 579 N.E.2d 276 (12th Dist.1989).

{¶ 26} "An abuse of discretion occurs when a trial court's decision is unreasonable, arbitrary or unconscionable." *Cleveland v. Wanton*, 8th Dist. Cuyahoga No. 109828, 2021-Ohio-1951, ¶ 8, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "'An abuse of discretion also occurs when a trial court "'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'"'" *State v. Nix, II*, 8th Dist. Cuyahoga No. 111803, 2023-Ohio-1143, ¶ 10, quoting *State v. Walton*, 8th Dist. Cuyahoga No. 87347, 2006-Ohio-47718, quoting *S. Euclid v. Datillo*, 2020-Ohio-4999, 160 N.E.3d 813, ¶ 8 (8th Dist.), quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

{¶ 27} In *State v. Ferguson*, 5 Ohio St.3d 160, 165, 450 N.E.2d 265 (1983), the Ohio Supreme Court held that

R.C. 2907.02(D) will render inadmissible evidence of the rape victim's sexual activity with one other than the accused where the evidence: does not involve the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender; is offered simply to impeach the credibility of the victim; and is not material to a fact at issue in the case.

As such, the Rape Shield Statute "essentially prohibits the introduction of any extrinsic evidence pertaining to the victim's sexual activity, with limited exceptions." *Dawson* at ¶ 21. However, the law is not absolute; evidence otherwise prohibited may be admissible when offered for more than the impeachment of a witness where the evidence is "directly probative of a material issue in the case." *State v. Williams*, 21 Ohio St.3d 33, 487 N.E.2d 560 (1986).

{¶ 28} The exclusion of evidence under the Rape Shield Statute may serve to inhibit a defendant's constitutional rights to confront, cross-examine, and call witnesses. *State v. Gardner*, 59 Ohio St.2d 14, 17, 391 N.E.2d 337 (1979), citing *Chambers v. Mississippi*, 410 U.S. 284, 294-295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Because of this, when reviewing the application of the Rape Shield Statute to exclude evidence, courts balance the state's interest in applying the Rape Shield Statute against the probative value of the evidence excluded. *Id.* In consideration of this need to balance respective rights, the Ohio Supreme Court noted the state had several legitimate interests in applying R.C. 2907.02:

First, by guarding the complainant's sexual privacy and protecting her from undue harassment, the law discourages the tendency in rape cases to try the victim rather than the defendant. In line with this, the law may encourage the reporting of rape, thus aiding crime prevention. Finally, by excluding evidence that is unduly

inflammatory and prejudicial, while being only marginally probative, the statute is intended to aid in the truth-finding process.

(Footnote omitted.) *Id.*

{¶ 29} We first address the state's argument, brought without citation to any precedent, that Kirby's failure to provide notice of its intent to use evidence covered under the Rape Shield Law precluded admission of that evidence at trial. The failure to provide notice or intent to use the evidence prior to trial does not preclude admission of that evidence; pursuant to R.C. 2907.02(E), a court may determine the admissibility of evidence during trial. Accordingly, we do not find merit to the state's argument.

{¶ 30} In this case, we have no proffer of the specific testimony that would have been offered by Lavender or Kirby. However, the record does reflect that the trial court did allow testimony from Lavender and Kirby regarding the nature and tone of the conversations they had with M.M. Lavender testified that M.M. said she "liked her toes sucked." He also testified they discussed a website "Chaturbate" and a female sex toy. Further, although Kirby's testimony was limited to exclude specific detail or statements about M.M.'s sexual activity or conduct, he testified the conversations were sexualized and M.M. showed him explicit material.

{¶ 31} The record reflects the trial court precluded evidence specific to M.M. that would be prohibited by R.C. 2907.02(D). It did not exclude Kirby from presenting his evidence that the conversations had were of a sexualized nature or that M.M. showed him explicit photos and videos. As such, we cannot say Kirby's

rights were violated by the exclusion of evidence regarding M.M. pursuant to the Rape Shield Statute, nor can we find that the trial court abused its discretion.

{¶ 32} The first assignment of error is overruled.

## The Convictions Were Based on Sufficient Evidence and Were Not Against the Manifest Weight of the Evidence

{¶ 33} We address Kirby's second, third, and fourth assignments of error together because within each assignment of error, Kirby argues the evidence presented at trial was insufficient to sustain his convictions. They read:

> II. The trial court's finding of guilt with regard to Counts One, Two and Four are not supported by evidence sufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

> III. The trial court erred when it denied Appellant's Motion for Judgment of Acquittal pursuant to Criminal Rule 29.

> IV. The trial court erred when it denied Appellant's renewed Motion for Judgment of Acquittal pursuant to Criminal Rule 29.

{¶ 34} Kirby argues the evidence was insufficient because M.M.'s testimony was contradictory to both her prior statements and to Kirby's and Lavender's testimony and that no rational trier of fact could find her testimony credible. He also argues the state failed to present evidence as to all elements of the crime of abduction. The state argues that there was sufficient evidence presented on all elements of all charges to sustain the convictions.

{¶ 35} We review challenges to the sufficiency of evidence admitted at trial and determine whether the evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d

259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* When reviewing the evidence, we are mindful that circumstantial and direct evidence "possess the same probative value." *Id.* at 272. Our review of the evidence is not to determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶ 36} Kirby was convicted of two counts of attempted rape and one count of abduction. In order to prove the crime of attempted rape, the state was required to present evidence that Kirby's actions, if successful, would constitute sexual conduct with M.M. by compelling her to submit by force or threat of force. R.C. 2923.02(A) and 2907.02(A)(2). In order to prove the crime of abduction, the state was required to present evidence that Kirby, without privilege and by force or threat, restrained M.M.'s liberty under circumstances that created a risk of physical harm or placed her in fear. R.C. 2905.02(A)(2).

{¶ 37} "This court has noted that Ohio courts consistently hold that a victim's testimony alone is sufficient to support a rape conviction" and that the testimony need not be corroborated. *State v. Smith*, 8th Dist. Cuyahoga No. 111870, 2023-Ohio-1670, ¶ 20. The evidence presented at trial during M.M.'s testimony was that as she gathered her belongings to leave the office, Kirby, with penis out, grabbed her tightly by the neck. She pulled away, and Kirby grabbed her by her ponytail and

told her to engage in oral sex. M.M. said that her face was so close that "it almost touched him." M.M. also testified that she was "scared" and "began to panic."

{¶ 38} By grabbing M.M.'s neck first and then her hair while telling her to engage in sexual conduct as she was about to leave the office, we find the state presented sufficient evidence to support Kirby's two convictions for attempted rape and abduction. M.M.'s testimony described an attempt to use force for her to perform oral sex. Further, her testimony reveals Kirby's actions caused her to panic and be in fear. Accordingly, we find there was sufficient evidence presented to sustain the convictions and that the trial court did not err by denying Kirby's motions pursuant to Crim.R. 29.

{¶ 39} The second, third, and fourth assignments of error are overruled.

{¶ 40} Kirby's fifth assignment of error reads:

V. The trial court violated Appellant's rights to due process and a fair trial by entering a judgment of convictions on counts one, two, and four against the manifest weight of the evidence.

{¶ 41} A manifest weight challenge to a conviction asserts that the state has not met its burden of persuasion in obtaining the conviction. *Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541. A manifest weight challenge raises factual issues and our court's review is one in which it will, after

> "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in

> the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Townsend*, 8th Dist. Cuyahoga No. 107177, 2019-Ohio-544, ¶ 20.

{¶ 42} When we examine witness credibility, we are "mindful that 'the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" *State v. Williams*, 2019-Ohio-794, 132 N.E.3d 1233, ¶ 28 (8th Dist.), quoting *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). Further, we recognize that the trier of fact may accept or reject a witnesses' testimony in whole or in part. *State v. Grimes*, 8th Dist. Cuyahoga No. 110925, 2022-Ohio-4526, ¶ 53, citing *Parma v. Singh*, 8th Dist. Cuyahoga No. 106935, 2018-Ohio-5235, ¶ 21. Accordingly, inconsistencies or contradictions in a witness's testimony do not automatically entitle a defendant to a reversal of trial. *State v. Solomon*, 8th Dist. Cuyahoga No. 109535, 2021-Ohio-940, ¶ 62, citing *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 45 (8th Dist.).

{¶ 43} Kirby argues that the convictions are the product of an unreasonable resolution of the competing narratives presented at trial and are therefore unjust. Kirby posits that his testimony was more plausible than M.M.'s because of contradictions between M.M.'s testimony and her prior statements, her motivation to lie, and that Lavender's and his testimony was more plausible. The state argues

the convictions were not against the manifest weight of the evidence when considering M.M.'s testimony in light of Kirby's apologies.

{¶ 44} Despite Kirby's arguments, our review of the record reveals that M.M.'s testimony was not inherently so incredible that a reasonable trier of fact could not believe it. Moreover, M.M.'s testimony was bolstered by Kirby's apologies. Further, the trial court was able to hear the testimony, observe the witnesses' demeanors, and was in the best position to weigh their credibility and resolve any conflicts in the testimony. After weighing the testimony and evidence and inferences to be drawn therefrom, and in consideration of the credibility of the witnesses' and their testimonies, we cannot say that the trial court clearly lost its way in entering guilty verdicts in this case or that this case is one in which a manifest miscarriage of justice occurred.

{¶ 45} The fifth assignment of error is overruled.

## CONCLUSION

{¶ 46} We affirm Kirby's convictions for attempted rape and abduction. The trial court did not abuse its discretion by prohibiting testimony pursuant to the Rape Shield Statute. Kirby's convictions were not based on insufficient evidence where the state presented evidence to each element of the offenses through M.M.'s testimony, and the trial court did not err by denying Kirby's motions brought pursuant to Crim.R. 29. Further, the convictions are not against the manifest weight of the evidence and we cannot say the trial court lost its way in resolving conflicts in

the evidence and testimony or this case is the exceptional case in which a manifest miscarriage of justice occurred.

{¶ 47} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
EILEEN T. GALLAGHER, J., CONCUR